UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                 :

CONSOLIDATED EDISON COMPANY OF     :
NEW YORK, INC.; and                            :
AEGIS INSURANCE SERVICES, INC., LIBERTY   :
INTERNATIONAL UNDERWRITERS, INC.,     :   07 Civ. 7968 (AKH)
NATIONAL UNION INSURANCE COMPANY OF   :
PITTSBURGH, NUCLEAR ELECTRIC INSURANCE   :   ECF CASE
LIMITED and CERTAIN UNDERWRITERS AT     :
LLOYDS (SYNDICATE 1225), all as subrogees of   :
CONSOLIDATED EDISON COMPANY OF NEW    :
YORK, INC.,                                :
                                            :
                         Plaintiffs,       :
                                              :
           - against -                  :
                                            :
7 WORLD TRADE COMPANY, L.P., 7 WORLD     :
TRADE COMPANY, L.P. d/b/a 7 WORLD TRADE   :
CENTER COMPANY, SILVERSTEIN          :
DEVELOPMENT CORP. and                :
SILVERSTEIN PROPERTIES INC.,           :
                                            :
                         Defendants.     :
-------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
Eric Seiler
Katherine L. Pringle
Kent K. Anker
Jeffrey R. Wang
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

Attorneys for Defendants

January 14, 2008

554912.8

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

THE ALLEGATIONS OF THE COMPLAINT ................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.    PLAINTIFFS HAVE NO CLAIM FOR BREACH OF CONTRACT, BECAUSE
      THE AGREEMENT IS PLAINLY LIMITED TO PARTICULAR ACTIVITIES,
      AND PLAINTIFFS DO NOT ALLEGE THAT ITS DAMAGES WERE
      CAUSED BY THE COVERED ACTIVITIES ................................................................. 5

      A.    The Consent Agreement, and its Indemnification Provision, Are Expressly
            Limited to Particular Construction Activities ........................................................... 6

      B.    Con Edison's Claim Fails Because Its Damages Did Not Arise Out of
            "construction or pre-construction activities" ............................................................. 9

      C.    Plaintiffs' Claim Fails Because It Does Not Allege that Con Edison's
            Property Was Damaged By the Work ....................................................................... 11

II.   THE COMPLAINT SHOULD, AT A MINIMUM, BE DISMISSED AGAINST
      SILVERSTEIN PROPERTIES, WHICH IS NOT A PARTY TO THE
      AGREEMENT ................................................................................................................ 13

CONCLUSION ................................................................................................................. 14

## **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Advance Mktg. Group, Inc. v. Business Payment Sys., LLC,*
  481 F. Supp. 2d 319 (S.D.N.Y. 2007) ................................................................ 2

*Alexander & Alexander Servs. Inc. v. Certain Underwriters at Lloyd's,*
  136 F.3d 82 (2d Cir. 1998) ............................................................................ 4

*Allendale Mut. Ins. Co. v. Excess Ins. Co.,*
  992 F. Supp. 271 (S.D.N.Y. 1997) .................................................................. 9

*Gordon v. Dino De Laurentiis Corp.,*
  141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ...................................... 11

*International Audiotext Network, Inc. v. American Tel. & Tel. Co.,*
  62 F.3d 69 (2d Cir. 1995) ............................................................................. 3

*Petitt v. Celebrity Cruises, Inc.,*
  153 F. Supp. 2d 240 (S.D.N.Y. 2001) ............................................................. 11

*Postlewaite v. McGraw-Hill, Inc.,*
  411 F.3d 63 (2d Cir. 2005) ........................................................................... 5

*RJE Corp. v. Northville Indus. Corp.,*
  198 F. Supp. 2d 249 (E.D.N.Y. 2002) ............................................................. 5

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,*
  75 F.3d 801 (2d Cir. 1996) ........................................................................... 3

*Thayer v. Dial Indus. Sales, Inc.,*
  85 F. Supp. 2d 263 (S.D.N.Y. 2000) ............................................................... 4

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.,*
  1 N.Y.3d 470 (2004) .................................................................................... 9

*Wallace v. 600 Partners Co.,*
  86 N.Y.2d 543, 634 N.Y.S.2d 669 (1995) ....................................................... 5, 9

## **TREATISES**

22 N.Y. Jur. 2d CONTRACTS § 251 ..................................................................... 5

Defendants 7 World Trade Company, L.P., 7 World Trade Center Company, Silverstein Development Corp. and Silverstein Properties Inc. (together, "Silverstein") respectfully submit this memorandum of law in support of their motion to dismiss the new complaint filed by Con Edison and its insurers/subrogees.

## INTRODUCTION

Six years after September 11, 2001, Con Edison and its subrogated insurers have filed a new lawsuit against Silverstein, alleging a single cause of action for breach of contract arising out of the destruction of Con Edison's substation on September 11. Con Edison has now apparently decided that a 1982 Consent Agreement between Con Edison and Silverstein – an agreement whose purpose was merely to grant Silverstein access to the substation during the construction of the 7 World Trade Center building and to protect Con Edison from any damage that might occur during construction – imposes on Silverstein a perpetual duty to indemnify Con Edison for damages incurred in the building collapse twenty years later. Notably, Con Edison's epiphany comes *five years after* Con Edison filed its first complaint seeking recovery for damage to its substation, and *three years after* it filed its first such complaint against Silverstein.

Why, then, did Con Edison wait so long to claim that the 1982 Agreement imposes this broad-based contractual duty on Silverstein? Perhaps because the Agreement says no such thing. In fact, the Consent Agreement makes plain that it does *not* apply to the events of September 11. The Agreement is unambiguously limited to the specific work for which Silverstein requested access, and for which Silverstein sought and obtained Con Edison's review and acceptance.

The indemnification provision on which plaintiffs sue reflects the limited scope of the overall Agreement, providing only for indemnification for damages occurred in "construction

and pre-construction activities," that are "in, on or about" the substation, and for plans that have

been "submitted, and accepted by, Con Edison." Plaintiffs' new claim should be rejected

because they do not seek damages that were incurred in "construction [or] pre-construction

activities." Plaintiffs also never allege that their damages were caused by the work that is the

subject of the indemnification provision; to the contrary, they allege that their damages were

caused by subsequent events, including the installation of fuel systems and the maintenance and

operation of the building, that fall well outside of the scope of the Agreement and the

indemnification clause.

Plaintiffs cannot, by instituting this new contract action, avoid the obligations of

proof required by their existing negligence action. Their attempt to transform a work access

permit, allowing Silverstein to access the substation during construction, into an insurance policy

for the substation against all future damage, is contrary to the plain language and purpose of the

contract. The new complaint should therefore be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## THE ALLEGATIONS OF THE COMPLAINT[1]

Aside from general allegations concerning the events of September 11, 2001, Con

Edison's bare-bones complaint states that, in or about March 1982, Silverstein and Con Edison

entered into the Consent Agreement in order to "permit[] Silverstein to construct a building upon

the Substation." (Complaint ¶ 18.) However, this allegation is contradicted by the Agreement,

which explicitly states that its purpose is to grant Silverstein *access to the substation* during the

---

[1] On a motion to dismiss, all well-pleaded factual allegations must be assumed to be true. *See, e.g., Advance Mktg. Group, Inc. v. Business Payment Sys., LLC*, 481 F. Supp. 2d 319, 322 (S.D.N.Y. 2007). However, where, as here, the complaint contains allegations about a contract that are belied by the language of the contract itself, this Court may examine that contract to determine the truth of plaintiffs' allegations. *See id.* With regard to the remainder of the allegations, although they are assumed to be true for the purposes of this motion, Silverstein does not concede that they are, in fact, true.

period of construction.  (Consent Agt. at 1 ("You [Silverstein] have requested access to the

[substation] ... Con Edison is willing to grant such access on the terms and conditions that

follow....")[2]  Indeed, the Consent Agreement itself acknowledges that Silverstein acquired the

right to construct the 7 World Trade Center building in a separate, earlier agreement between

Silverstein and the Port Authority.  (*Id.* (referencing the "proposed construction of an office

tower pursuant to your lease with the Port Authority of New York and New Jersey ('Port') dated

December 31, 1980").)

Plaintiffs cite the indemnification provisions in paragraph 16 of the Consent

Agreement – specifically, the first two subclauses of paragraph 16(a) – to support their claim.

Subclause 16(a)(1) provides that in the event of risk of loss or damage to the substation,

Silverstein "shall forthwith repair, replace, rebuild and make good the premises to the reasonable

satisfaction of Con Edison without cost to Con Edison."  (Compl. ¶ 29 (quoting Consent Agt. ¶

16(a)(1).)  Subclause 16(a)(2) provides that Silverstein will indemnify Con Edison for "damage,

direct or consequential, to . . . [Con Edison's] property arising out of or in connection with the

Work" (*id.* ¶ 29), with "Work" defined as "the construction and pre-construction activities of

Contractor on the proposed office tower . . . permitted by Con Edison, in, on, or about [the

substation]."  (*Id.* ¶ 28 n.3 (quoting Consent Agt. at 2).)  Plaintiffs' claim is necessarily based

solely on subclause 16(a)(2), since they are not demanding that Silverstein rebuild the substation

---

[2] Plaintiffs do not attach a copy of the Consent Agreement to the complaint.  However, because Con Edison relies upon the terms and effect of the Consent Agreement, the Agreement is integral to the complaint and consideration of the full text of the document is appropriate on a motion to dismiss.  *See, e.g., International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *see also San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996).  Accordingly, the Consent Agreement is attached as Exhibit A to the Declaration of Jeffrey R. Wang, dated January 14, 2008 ("Wang Decl.").

(pursuant to paragraph 16(a)(1)), but instead are, years later, seeking reimbursement of Con Edison's rebuilding costs pursuant to paragraph 16(a)(2).  (*See id.* ¶ 32.)

Plaintiffs do not allege the substation was damaged in "construction or pre-construction activities," nor do they allege that their damages resulted from any particular work, in, on or about the substation, that was approved and permitted by Con Edison pursuant to the Agreement.  To the contrary, plaintiffs allege that acts and omissions by Silverstein in the "design, approval, inspection, installation, maintenance, operation, conduct and control of the building systems, including but not limited to the load bearing structural systems, structural modifications, diesel-fueled power generation systems and appurtenant fuel oil and distribution systems and fire protection systems within the Building" led to the collapse of the building and destruction of the substation.  (*Id.* ¶ 31.)  They further allege that they incurred expenses of $129 million in replacing the substation, removing debris, and other related activities.  (*Id.* ¶ 32.)  They allege they made demand to Silverstein for payment of those amounts, and that payment has not been made.  (*Id.* ¶ 34.)

The complaint asserts a single count of breach of the Consent Agreement, arising out of Silverstein's failure to provide indemnification.  (*Id.* ¶ 36.)

## ARGUMENT

Under New York law, the determination of whether a contract term is ambiguous is a question of law for the court to decide.  *See Alexander & Alexander Servs. Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998); *see also Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000) (dismissing plaintiff's contract claim).  Indeed, "[i]ssues of contract interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss."  *See Thayer*, 85 F. Supp. 2d at 269 (internal citations and

quotations omitted). Because the Consent Agreement is unambiguous, there is no need for discovery, and this Court should dismiss the complaint as a matter of law.

## I.

### PLAINTIFFS HAVE NO CLAIM FOR BREACH OF CONTRACT, BECAUSE THE AGREEMENT IS PLAINLY LIMITED TO PARTICULAR ACTIVITIES, AND PLAINTIFFS DO NOT ALLEGE THAT ITS DAMAGES WERE CAUSED BY THE COVERED ACTIVITIES

The unambiguous terms of the Consent Agreement are clear: the Agreement was a work access permit, designed to protect Con Edison from any damage that might occur during the portions of the construction for which Silverstein required access to the substation. The indemnification clause reflects the limited scope of the Agreement. It is expressly limited to "construction and pre-construction activities," and to the particular work, "in, on and around" the substation, that was "submitted to, and approved by, Con Edison." (Consent Agt. ¶¶ 1, 2, 16(a)(2).)

Unambiguous contracts must be construed according to their plain language. *See, e.g., Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 671 (1995). Contracts must also "be read as a whole" and interpreted "to effect the general purpose of the contract." *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (citing *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358, 763 N.Y.S.2d 525 (2003)). Moreover, "[c]ontract provisions should not be read in isolation; rather, the entire contract must be considered." *See RJE Corp. v. Northville Indus. Corp.*, 198 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2002) (internal quotations omitted); *see also* 22 N.Y. Jur. 2d CONTRACTS § 251 ("Because the intention of parties is ascertained, not from one provision or particular words or phrases, but from the entire instrument, in the construction of contracts, the entire contract must

be considered. ... Single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.").

Applying these basic tenets of contract law, the Court should reject plaintiffs' eleventh-hour attempt to interpret the Consent Agreement as a broad-ranging and open-ended guarantee. *First*, the Consent Agreement was clearly limited in scope to relate to "pre-construction and construction activities," and was never intended to apply to remote events nearly 20 years after Silverstein's access to the substation. *Second*, the Consent Agreement was clearly limited to the particular construction for which Silverstein sought access, and the complaint does not allege that plaintiffs' damages were caused by such construction.

### A. The Consent Agreement, and its Indemnification Provision, Are Expressly Limited to Particular Construction Activities

The Consent Agreement is not, as plaintiffs' complaint implies, a broad agreement giving Silverstein a right to build a tower above the substation – Silverstein already had that right by virtue of an agreement with the Port Authority executed two years before the Consent Agreement, as is acknowledged in the Consent Agreement itself. (Consent Agt. at 1.) Instead, the purpose was to set the conditions under which Silverstein would be permitted *to have access to* the substation during the construction period and for the "work" (as defined in the Agreement) that required that access. That purpose is stated in the very first sentence: "You have requested access to the [substation] for the purpose of doing work, to be specified in detail, in connection with the proposed construction of an office tower pursuant to your lease with the Port Authority." Con Edison agrees to provide that access "on the terms and condition that follow" in the Consent Agreement (Consent Agt. at 1), and it specifies that the "work authorized by this Consent shall consist only of those activities specified by the Contractor [and] submitted

to, and accepted by, Con Edison," as well as any further "pre-construction activities and construction work . . . reasonably acceptable to Con Edison." (*Id.* ¶ 2(a).)

Paragraph 1 of the Agreement defines the "Work" as "*the construction and pre-construction* activities of Contractor on the proposed office tower . . . . *permitted by Con Edison, in, on, or about* the" substation (emphasis added). The term "Work" is then a limiting term throughout the provisions of the Agreement. Paragraph 2(a) further specifies that the scope of the work governed by the Agreement is strictly limited:

> The work authorized by this Consent shall consist *only of those activities specified by the Contractor* or by third parties acting for the Contractor on drawings, plans, specifications, (including work procedures, equipment, sequence schedules, restrictions on number and type of personnel, means of access, and starting and completion dates for the various stages of the Work) *that have been submitted to, and accepted by, Con Edison* and all additional and further pre-construction activities and construction work reasonably acceptable to Con Edison.

(Consent Agt. ¶ 2(a) (emphasis added).)

In exchange for providing access, Con Edison received the right to receive and review all "drawings, plans [and] specifications" for the Work, and the right to require "any and all information, revisions, modifications, changes, instructions, procedures, schedules, plans, drawing and other details which Con Edison deems necessary to consent." (*Id* ¶ 2(a).) Con Edison had the right to reject or revise all proposed plans for the Work (*id.* ¶ 2(d)), and "[b]efore starting any phase of the Work," Silverstein was required to demonstrate that Con Edison had accepted the plans for that phase (*id.* ¶ 2(b)). Con Edison had the right to periodic inspection and testing of all aspects of the Work (*id.* ¶ 8), the right to demand correction of any improper Work (*id.* ¶ 9), and the right to issue a "stop work" order to suspend the Work (*id.* ¶ 10). In short, the Consent Agreement was essentially a work permit – a term the parties themselves used – relating

to the work and time period for which Silverstein sought access.  (*See id.* ¶ 10 (referring to the activities "under this permit").)

Consistent with the overall purpose of the Agreement, the indemnification provision is expressly restricted to the particular activities governed by the Agreement.  As an initial matter, although plaintiffs quote both subclauses of paragraph 16(a), they can proceed only under the second.  The first, paragraph 16(a)(1), provides only for repair or rebuilding of the substation by Silverstein.  (Consent Agt. ¶ 16(a)(1) ("(1) Risk of loss or damage to the Premises. In the event of such loss or damage Contractor shall forthwith repair, replace, rebuild and make good the premises to the reasonable satisfaction of Con Edison without costs to Con Edison.").) Because plaintiffs are seeking indemnification for *financial* loss they suffered, and are not seeking to compel Silverstein to rebuild, it is clear that plaintiffs are not proceeding under this subparagraph but rather are proceeding under the second clause, paragraph 16(a)(2).[3]

Paragraph 16(a)(2) provides in relevant part that Silverstein shall indemnify Con Edison against the risk of "injury or damage, direct or consequential . . . to [Con Edison's] property arising out of or in connection with the Work."  Incorporating the definitions of "Work," already described, the relevant indemnification provision at issue is expressly limited to damages arising out of or in connection with "construction and pre-construction activities," that are "in, on or about" the substation, and for plans that have been "submitted, and accepted by, Con Edison."  (*Id.* ¶¶ 1, 2, 16(a)(2).)

---

[3] In any event, Con Edison waived that provision (even if it were applicable) when it chose to rebuild.

**B.    Con Edison's Claim Fails Because Its Damages Did Not Arise Out of "construction or pre-construction activities"**

Con Edison's complaint fails because Con Edison does not seek reimbursement for damages caused by "construction [or] pre-construction activities." While Con Edison seeks to interpret the limited indemnification as an open-ended, general guarantee against any future alleged failure of the building, the Agreement cannot reasonably be construed in this way.

First, the indemnification provision itself is expressly and unambiguously limited to damages "arising out or in connection with" "construction or pre-construction activities." The plain intent was that if, for example, in the process of constructing the foundations of the office tower some equipment damaged Con Edison property, Silverstein would indemnify. There is, however, nothing in the Agreement that suggests that Silverstein was undertaking a guarantee reaching twenty years into the future. Nor can the phrase "construction activities" be construed to imply a broad-ranging guarantee of the entire tower construction project. Reading it that way would be inconsistent with, and render irrelevant, the parties' use of the term "activities." *See Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 271, 275-76 (S.D.N.Y. 1997) (courts must construe contracts to avoid leaving contractual clauses meaningless). And if these sophisticated parties had intended for Silverstein to provide a permanent guarantee to all aspects of the building, they would simply have so provided. *See Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("where commercial certainty is a paramount concern, and where ... the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length ... courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (quotations and citations omitted)); *see also Wallace*, 86 N.Y.2d at 548 (same).

Second, the stated purpose and overall context of the Agreement, which addresses only the construction and pre-construction period, confirms the parties' intention that the indemnification be temporally limited in scope. The focus of the Agreement is on Silverstein's obligation to obtain review and approval by Con Edison for the particular work that required access to the substation. (*See* Consent Agt. ¶ 2.) Each provision in the Agreement, like the indemnification provision, similarly relates to conditions *during* the construction, not long after it. (*See, e.g., id.* ¶ 4 (charges to be assumed by Silverstein during the Work); ¶ 5 (superintendence by Silverstein during the Work); ¶ 6 (status reports on the Work); ¶ 9 (periodic inspection of the Work during construction).)

The provisions cited in plaintiffs' new complaint only reinforce this conclusion. Plaintiffs cite selected excepts of paragraph 13, but when viewed as a whole it is clear that Paragraph 13 applies only to the period of Silverstein's access to the substation during construction. The entirety of paragraph 13 provides as follows (with the portions omitted by plaintiffs in italics):

> 13. <u>CARE AND RESTORATION OF PREMISES</u>: Contractor shall, as part of the Work –
>
> (a) take every precaution to protect persons from injuries and prevent damage to property of Con Edison and others;
>
> (b) *store any apparatus, material, supplies and equipment permitted in the Premises so that it will not interfere with the safe, reliable and continuous operation of the substation;*
>
> (c) *place upon the Premises only such loads as may be allowed by Con Edison's safety and operating standards and which do not materially affect the structural integrity of the Premises;*
>
> (d) *clean up and remove from the jobsite, all trash, refuse, rubbish, scrap materials and other debris so that the Premises is reasonably safe and appears neat and orderly at all times;*
>
> (e) *remove all temporary structures and substantially restore the Premises to its original condition except for changes authorized by Con Edison in writing;*

(f)  *post security guards at locations required by Con Edison;*

(g)  promptly compensate Con Edison for any loss, injury or damage attributable to the Work.

(*See* Consent Agt. ¶ 13.)  The seven enumerated obligations above – which include activities

such as storage of materials during construction, clean-up of trash from the premises, and

removal of temporary structures – establish that the paragraph as a whole was meant to set forth

Silverstein's obligations *during* the period of Silverstein's access to the substation, not

obligations arising in the years following it.  The paragraph is also limited, both in its

introductory language and in subclause (g), to the "Work,"[4] defined elsewhere as the

"construction and pre-construction activities." (*See id.* ¶ 1.)

C.    **Plaintiffs' Claim Fails Because It Does Not Allege that
      Con Edison's Property Was Damaged By the Work**

Plaintiffs' claim also fails because there is no allegation that plaintiffs' damages

are due to the limited work that was the subject of the Agreement and of the indemnification

clause.  A complaint is "facially deficient [if] it does not demonstrate how the defendant's

alleged breach ... caused plaintiffs any injury." *Gordon v. Dino De Laurentiis Corp.*, 141

A.D.2d 435, 436, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) (dismissing cause of action for breach

of contract where plaintiffs failed to allege a connection between plaintiffs' damages and

defendant's alleged breach of the parties' confidentiality agreement); *see also Petitt v. Celebrity

Cruises, Inc.*, 153 F. Supp. 2d 240, 263 (S.D.N.Y. 2001) (plaintiffs' breach of contract claim

subject to dismissal "because plaintiffs have failed to establish that their damages[] were caused

by [defendant's] breach").

---

[4] Plaintiffs, in their Complaint, misquote the introductory language of Paragraph 13, using a lower-case letter for "work," and thus obscuring the reference to the defined term "Work."  (*See* Compl. ¶ 28 (misquoting Consent Agreement ¶ 13).)

Plaintiffs claim, in the most general possible language, that their property was damaged by alleged "acts and omissions in the design, approval, inspection, installation, maintenance, operation, conduct and control of the building systems, including but not limited to the load bearing structural systems, structural modifications, diesel-fueled power generation systems and appurtenant fuel oil and distribution systems and fire protection systems within the Building." (Compl. ¶ 31.) But plaintiffs conspicuously avoid any allegation of what particular work caused the damages.

The indemnification, however, like the overall contract, is expressly limited to the particular work for which access to the substation was provided. Silverstein only agreed to indemnify Con Edison for damages from the "Work." Paragraph 2(a) further limited the scope of the work to those activities approved by Con Edison, which describes the permission as only reaching "those activities specified by the Contractor . . . that have been submitted to, and accepted by, Con Edison and all additional and further pre-construction activities and construction work reasonably acceptable to Con Edison." (Consent Agt. ¶ 2(a).) Thus Silverstein agreed only to indemnify Con Edison for the particular work for which it was seeking access and, in exchange for that access, was submitting plans and obtaining acceptance by Con Edison.

Plaintiffs' attempt to interject a more broad-reaching standard of care into the Agreement is both misleading and unsupportable. They claim that the Agreement provides, in paragraph 13, "a standard of care to be utilized in construction, maintenance and occupancy of the Building." (Compl. ¶ 28.) As shown above, paragraph 13 says no such thing. It says nothing about general construction, and never even mentions maintenance or occupancy – subjects that appear nowhere at all in the Agreement. Paragraph 13 is instead limited, like the

rest of the Agreement, to "the Work," and states only that "Contractor shall, as part of the Work"

take certain precautions and compensate Con Edison "for loss, injury or damage attributable to

the Work." (Consent Agt. ¶ 13.)

       Every substantive provision of the Agreement is, like paragraph 13, limited to

"the Work," i.e., the construction and pre-construction activities that were presented to and

accepted by Con Edison in exchange for access to the substation.  (*See* Consent Agt. ¶¶ 2-6, 8-10

(each limited by reference to the "Work").)   There is, quite simply, nothing in the Consent

Agreement that suggests that Silverstein took on obligations apart from the particular work for

which it sought access to the substation.

       Even under the most liberal pleading standards – and particularly after years of

intensive litigation surrounding the destruction of 7 World Trade Center and the Con Edison

substation – the absence of any allegation of a nexus between plaintiffs' damages to the subject

of the Agreement and the indemnification clause dooms plaintiffs' complaint, and it should

therefore be dismissed.

## II.

### THE COMPLAINT SHOULD, AT A MINIMUM, BE DISMISSED AGAINST SILVERSTEIN PROPERTIES, WHICH IS NOT A PARTY TO THE AGREEMENT

       Finally, plaintiffs never explain why they sued Silverstein Properties.  The

Consent Agreement was entered between Con Edison and Larry Silverstein, as President of

Silverstein Development Corp., as General Partner of 7 World Trade Company.[5]  Not only is

Silverstein Properties not a signatory, there is not a single reference to Silverstein Properties

---

[5] The Agreement further defines "Contractor," which is the term used throughout for the obligated party, as "7 World Trade Center Company, acting by and through Silverstein Development Corp., as its general partner." (Consent Agreement ¶ 1.)

anywhere in the Consent Agreement. There can be no question, therefore, that Silverstein Properties *is not* a party to the Consent Agreement. Plaintiffs' sole allegation concerning Silverstein Properties is that it is an "agent of defendant 7 World Trade Company." (Complaint ¶ 11.) But plaintiffs never allege anything that Silverstein Properties supposedly did, nor do they allege why it is that Silverstein Properties should be responsible for breach of a contract to which it was not a party. Silverstein Properties should accordingly be dismissed from the new suit.

## CONCLUSION

For all of the foregoing reasons, plaintiffs have failed to state a claim for breach of contract against any of the defendants, and their new complaint should be dismissed.

Dated:    New York, New York
          January 14, 2008

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Eric Seiler
Katherine L. Pringle
Kent K. Anker
Jeffrey R. Wang
1633 Broadway
New York, NY 10019
(212) 833-1100

*Attorneys for Defendants*

554912.8                                    14