# EXHIBIT A

Greenbaum, Rowe, Smith & Davis LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600

Gennet, Kallmann, Antin & Robinson, P.C.
45 Broadway Atrium
30th Floor
New York, New York 10006
(212) 406-1919

Attorneys for Plaintiffs

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| IN RE SEPTEMBER 11 PROPERTY DAMAGE<br>AND BUSINESS LOSS LITIGATION | 21 MC 101 (AKH) |
| AEGIS INSURANCE SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>PORT AUTHORITY OF NEW YORK AND<br>NEW JERSEY and THE CITY OF NEW YORK,<br><br>Defendants. | 02 CV 7188 (AKH) |
| AEGIS INSURANCE SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>7 WORLD TRADE CENTER COMPANY, L.P.,<br>et al.,<br><br>Defendants. | 04 CV 7272 (AKH)<br><br>AFFIDAVIT OF FRANKLIN M. SACHS, ESQ., IN SUPPORT OF PLAINTIFFS' MOTION, BASED UPON NEWLY DISCOVERED EVIDENCE, TO VACATE THIS COURT'S JAN. 12, 2006 ORDER GRANTING A FED. R. CIV. P. 12(b)(6) MOTION DISMISSING PLAINTIFFS' COMPLAINT AGAINST DEFENDANTS EMERY ROTH & SON, P.C., IRWIN G. CANTOR, P.C., AND CANTOR SEINUK GROUP, P.C. |

831025 01

STATE OF NEW JERSEY )
                    )ss:
COUNTY OF MIDDLESEX )

FRANKLIN M. SACHS, of full age, being duly sworn, hereby deposes and says:

1. I am an attorney-at-law of the states of New York and New Jersey and of counsel to the law firm of Greenbaum, Rowe, Smith & Davis LLP, co-counsel for plaintiffs in the above actions. I am one of the attorneys responsible for this litigation and, as such, I have personal knowledge of the facts contained herein.

2. This Affidavit is submitted in support of plaintiffs' Motion, based upon newly discovered evidence, to vacate the Court's order dated January 12, 2006 to the extent that it dismissed plaintiffs' action against Design Defendants Cantor Seinuk Group, Office of Irwin Cantor, P.C., and Emery Roth & Son, P.C.

3. In its opinion and order dated January 12, 2006, the Court dismissed Plaintiffs' complaint against a group of the Design Defendants holding that, with respect to the Design Defendants, where only property damage is alleged and "...where no privity or special relationship exists as between the plaintiff and the defendants" no duty of care is imposed upon them.

4. On May 16, 2006, while interviewing witnesses in order to respond to certain defendants' discovery requests in conjunction with the "expedited discovery" ordered by the Court on March 2, 2006, I discovered for the first time evidence of a significant direct relationship between Consolidated Edison and the Cantor and Emery Roth design defendants. Had this newly discovered evidence been known to plaintiffs' counsel and consequently to the Court, prior to January 12, 2006, the Court's decision as to this group of Design Defendants may well have been different.

-2-

831025.01

5. Request No. 6 of the Port Authority's Expedited Discovery Document Requests served on March 30, 2006 made reference to several agreements including an agreement called "the Consent Agreement."

6. Prior to reading Request #6, neither plaintiffs' litigation counsel nor Con Edison's inside counsel had ever heard of such an agreement. No such document was contained in any of the documents received from Con Edison prior to January 12, 2006, and, in fact, despite extensive efforts to locate that document in Con Edison's records, no such document has yet been found.

7. On April 12, 2006, I attended a meeting at Con Edison's New York office to begin answering interrogatories and locating documents responsive to Citigroup's argument that in the 1968 Lease, Con Edison gave up its right to recover damages from the Port Authority and future tenants for negligence related to the construction, maintenance and occupancy of the proposed WTC7 office tower for as long as the building existed. In the course of questioning various Con Edison personnel regarding any knowledge of Con Edison's having relinquished its right to recover damages as argued by Citigroup, someone mentioned that just the opposite was true and gave as an example negotiations with "Silverstein" and the Port Authority regarding erection of the office tower above the Con Edison substation in the early eighties. No one at the meeting had any direct knowledge of these "negotiations", but someone suggested that a retired engineer named Dick King should have knowledge of what had occurred.

8. That afternoon, inside counsel for Con Edison contacted Dick King who had been the Con Edison project manager when Silverstein built WTC7. Arrangements were made for me to meet with Mr. King on May 1, 2006.

9. On May 1, 2006, I met with Dick King. He told me that he had been the Chief Civil Engineer and manager in the engineering department and was the project manager with respect to WTC7 regarding: (1) interfacing with Silverstein; (2) protecting Con Edison's facility (substation) from possible damage from work to construct the WTC7 floors above Con Edison's space; and (3) coordinating and scheduling of Silverstein's work on the building with Con Edison's use of its substation. Damage to the substation was his primary concern. He worked with two civil engineers, Bob Nadolny and Jim Chan. He told me he had many discussions with Silverstein regarding the need for Silverstein to protect the substation and to make Con Ed whole in the event of any damage caused to the substation by the construction of WTC7. This included an agreement for a seismic monitoring system. Con Edison hired the monitoring firm and Silverstein provided for the monitoring.

10 Mr. King believed there was a detailed agreement regarding the foregoing. Consequently, we had a substantial discussion as to where his file on this project would be found. He stated that the engineering department, as it existed in the mid-1980's, had been disbanded and he was not certain where the files could be found. However, he agreed to attempt to locate this file at Con Edison. On that same date, my associate and I met with several other Con Edison personnel in an unsuccessful attempt to find the file referenced by Mr. King.

11 Between May 1 and May 16 I asked my paralegal staff to search the documents that had been produced to us previously by the Silverstein defendants to see if we could find any documents that Mr King may have been referring to in our discussion and to search for any document containing the phrase "consent agreement", as used in request #6 of the Port Authority's document requests. They found a document bearing production # 7WTC-0011653 through 0011680, which is a letter in which Con Edison consents to give Silverstein access to the

-4-

substation with respect to the proposed construction of an office tower. That document appeared to be the "consent agreement" referenced in the Port Authority's Document Request # 6. A true and accurate copy of that document is attached as Exhibit A.

12. On May 16, 2006, I again met with Mr. King, who on this occasion was accompanied by Jim Chan, a retired Con Edison engineer who had also worked with the Silverstein defendants and their Design Professionals during the construction of WTC7. I showed them the "Consent Agreement" that we had found, and Mr. King confirmed that this was the detailed agreement he had referred to on May 1.

13. Both Mr. Chan and Mr. King told me for the first time that not only did they have a close relationship with Larry Silverstein personally, but they developed a very close working relationship directly with two of his design professionals, Richard Roth of Emery Roth architects and Irwin Cantor, the structural engineer. They told me that they met with Roth, Cantor and Silverstein several times a month during the early stages of the construction of the WTC7 tower to discuss issues related to the construction of the office tower and its possible effect on the substation. They estimated that there were probably 25 - 50 such meetings. Written memoranda were made of most, if not all, of those meetings and would have been in Mr. King's file. He reported that he had been unsuccessful in finding that file at Con Edison.

14. In response to my direct question to them as to whether or not Roth and Cantor believed they had a duty to Con Edison to protect the substation from damage, they both stated that they had no doubt both firms understood that duty. Concern about potential damage to the substation was the only reason behind the "consent agreement" and all the meetings and conferences that took place between them and Silverstein, Cantor and Roth thereafter.

15. On June 1, 2006, Jemi Goulian, one of my associates, visited Con Edison in another unsuccessful attempt to locate the engineering file maintained by Mr. King

16. On June 19, 2006, Ms. Goulian and a paralegal searched for the engineering file referenced by Mr. King at the Iron Mountain archive facility in East Brunswick, New Jersey where some Con Edison archived files had been sent, and were unsuccessful.

17. To date, both we and Con Edison have been unsuccessful in locating the Con Edison file containing the drawings submitted to Con Edison by Irwin Cantor and Richard Roth and the memoranda of the weekly meetings among the Con Edison representatives, Silverstein, and his Design Professionals.

FRANKLIN M. SACHS

Sworn to before me this
20th day of July, 2006

~~Notary Public~~
Jemi M Goulian, an
attorney at law of the
state of New Jersey