# EXHIBIT C

CED 41668

## AGREEMENT OF LEASE

THIS AGREEMENT OF LEASE, made as of *May 29th*, 1968 by and between THE PORT OF NEW YORK AUTHORITY (hereinafter called "the Port Authority") a body corporate and politic established by Compact between the States of New Jersey and New York with the consent of the Congress of the United States of America, and having an office at 111 Eighth Avenue, New York, New York 10011, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. (hereinafter called "the Lessee"), a corporation organized and existing under the laws of the State of New York, having its principal office at No. 4 Irving Place, New York, New York 10003.

### W I T N E S S E T H :

WHEREAS:

1. By concurrent legislation of the State of New York, Chapter 209, Laws of New York, 1962, and the State of New Jersey, Chapter 8, Laws of New Jersey, 1962, the Port Authority was authorized to establish, develop and operate the World Trade Center, and, for such purposes is in the process of acquiring and improving certain lands in the Borough of Manhattan, City of New York.

2. The Lessee is an electric corporation as that term is defined in the New York Public Service Law and the Transportation Corporations Law, and is engaged in supplying electricity to consumers, including the Port Authority, in the Borough of Manhattan and in other parts of the City of New York pursuant to franchises granted to it for such purposes.

3. In order to provide for the efficient and expeditious supply of electricity to the World Trade Center, the Port Authority has agreed to construct a building and related facilities on a portion of the World Trade Center area for use by the Lessee as an electric bulk power substation, all as more particularly provided herein.

4. Simultaneously with the execution and delivery of this Agreement, the parties hereto are entering into an Electricity Supply Contract pursuant to which the Lessee will furnish and supply the electricity requirements of the World Trade Center, from the aforesaid electric bulk power substation (hereinafter sometimes referred to as the "Substation") to be installed by the Lessee in the building to be constructed by the Port Authority all as more particularly set forth in said Contract.

NOW, THEREFORE, in consideration of the covenants and mutual agreements hereinafter contained, the Port Authority and the Lessee, each for itself, and its successors and assigns, agree with each other as follows:

CED 41668

## Section 1.   Letting

The Port Authority hereby lets to the Lessee and the Lessee hereby hires and takes from the Port Authority at the World Trade Center (hereinafter called "the Facility") in the Borough of Manhattan, City, County and State of New York, the land shown and described in stipple on the sketch annexed hereto, hereby made a part hereof and marked "Exhibit A", together with the Substation Building which is hereinafter described and which, in accordance with the provisions of this Agreement, is to be constructed and located therein or thereon by the Port Authority, said land and Substation Building being sometimes hereinafter collectively called "the premises".

## Section 2.   Term

The term of the letting under this Agreement shall commence on a date thirty (30) days after certification to the Lessee by the Manager of the Port Authority World Trade Center Planning and Construction Division (hereinafter called "Manager, Planning and Construction") that the improvements described in the section of this Agreement entitled "Construction of Substation Building" have been substantially completed, provided that the Substation Building is then available to the Lessee for its use as contemplated in this Agreement.  The term of the letting shall, unless sooner terminated, expire on the last day of the month in which the fiftieth (50th) anniversary of the commencement date falls.

## Section 3.   Purpose

The Lessee shall use the premises for the installation, maintenance and operation of an electric bulk power substation constituting a part of Lessee's electrical system for the supply of electricity for the Facility and for Lessee's other customers.  The Lessee shall not use the premises for any other purpose or purposes whatsoever.

## Section 4.   Construction of Substation Building —

(a)  The Port Authority shall construct on the premises a building and related facilities (including vaults and chambers below the ground level of the building) for the use of the Lessee as an electric bulk power substation, all as more specifically described in the drawings, plans and specifications referred to in the tabulation annexed hereto, hereby made a part hereof and marked "Exhibit B".  Said building and facilities are hereinafter in this Agreement sometimes collectively referred to as the "Substation Building".

(b)  It has been estimated that construction of the Substation Building will be substantially completed on or before April 1, 1969 (hereinafter referred to as the "estimated completion date") and the Port Authority agrees to use its best efforts to complete construction of the same by such date.  If, nevertheless, the performance of any part or all

- 2 -

CED 568

of the construction of the Substation Building is delayed, interrupted or rendered impossible due to causes or conditions beyond the control of the Port Authority so that in the opinion of the Manager, Planning and Construction the construction will not be completed by the estimated completion date, the Port Authority shall have the right to postpone the estimated completion date in accordance with such notice or notices as the Port Authority may give to the Lessee from time to time either before or after April 1, 1969, and the estimated completion date shall be postponed to the date stated in such notice or notices, provided, however, that each notice to the Lessee shall be at least a ten (10) day notice. The Lessee shall have no right or claim for damages against the Port Authority or any of its contractors based upon any such delay in construction or postponement of the commencement date of the letting and no such delay or postponement shall in any way affect the validity of this Agreement. The parties expressly agree to coordinate their construction plans for the Substation Building so that the Substation can be put in operation in an efficient manner at as early a date as possible.

(c) Reference in Exhibit B, if any, to any building code or other requirements of any municipality is made solely for the purpose of correctly establishing engineering standards for construction and shall not be deemed to be an admission by the Port Authority that any such code or other requirement applies to the Port Authority or the construction. No substantial design changes shall be made in the drawings, plans and specifications referred to in Exhibit B without the approval of the Manager, Planning and Construction and the Chief Electrical Engineer of the Lessee, except that this shall not preclude any such design changes as may be required by applicable law or which the Port Authority may elect to make in order voluntarily to comply with governmental requirements. The Port Authority's approval or use of such drawings, plans or specifications or changes therein shall not be deemed a representation or warranty as to the condition, quality or efficiency of the improvements when completed.

(d) In addition to the construction of the Substation Building the Lessee has requested the Port Authority to install therein certain Substation equipment as itemized on the schedule annexed hereto as Exhibit C which equipment the Lessee agrees to furnish and deliver at the time and to the place designated in advance by the Port Authority. The Lessee has further requested that the Port Authority permit the Lessee to deliver and cause to be installed by the Lessee at its expense in the Substation Building certain additional Substation equipment as more particularly itemized on the aforesaid Exhibit C. Such additional equipment shall be installed at the time and in the manner designated by the Port Authority and the Lessee shall take all measures required to minimize any interference with the construction work of the Port Authority and to avoid any labor difficulty in connection therewith. The Lessee recognizes that the construction schedule will require the prompt delivery of such equipment and any delays due to the failure of the Lessee to so deliver or install the equipment shall be deemed to extend time for completion of the Substation Building.

- 3 -

CED 41168

(e)  Any contract entered into by the Port Authority for construction of the Substation Building may be made by negotiation or may be awarded after competitive bidding, including awards to others than the lowest bidder, or may be entered into on the basis of a combination of the foregoing or on some other basis, all within the sole discretion and control of the Port Authority.

(f)  Title to the Substation Building shall be and remain at all times in the Port Authority.

Section 5.   Installation of Substation Equipment

(a)  Subsequent to the commencement of the letting hereunder and during the term of the letting hereunder (including any renewal hereof), the Lessee shall, except as otherwise expressly provided in this Agreement, have possession and control of the Substation Building and adequate means of access thereto at all times. The Lessee, at its expense, shall provide and install all the electrical equipment and accessories required for the Substation, (which shall be designed to accommodate ten (10) main power transformers) together with buses, switching and associated equipment as well as electrical feeders connecting the Substation with the Lessee's electrical system in adjacent streets, and electrical feeders required to deliver electricity to the Port Authority. All such equipment, accessories, apparatus and devices so installed by the Lessee are sometimes hereinafter collectively called the "Substation Equipment".

(b)  All of the Substation Equipment installed by the Lessee shall remain its property and may be removed or replaced by it at any time and from time to time.

(c)  The Substation Equipment shall be installed generally in conformance with plans, specifications, standards and practices similar to those used by the Lessee in the equipment and operation of comparable substation facilities.  The Lessee shall provide the Port Authority with sketches and plans showing the Substation Equipment and any changes therein during the term hereof reasonably in advance of installation.  The Lessee shall make any changes in such plans as the Port Authority may request if such changes are reasonably necessary for the safety of the premises or the use by the Port Authority of the air space over the Substation Building or the land adjacent thereto, but no changes shall unreasonably interfere with the

- 4 -

use of the Substation Building by the Lessee for its purposes in any lawful manner in accordance with recognized engineering and safety standards.

(d)  The Lessee agrees to be solely responsible for any plans and specifications used by it and for any loss or damage resulting from the use thereof notwithstanding that the same may have been approved by the Port Authority and notwithstanding the incorporation therein of the Port Authority's recommendations or requirements.

## Section 6.  Basic Rental

During the term of the letting hereunder the Lessee shall pay to the Port Authority a basic rental of One Dollar and No Cents ($1.00) per annum payable in advance on the commencement date of the letting and on the first day of each and every year thereafter throughout the term of the letting hereunder, provided, however, that if for any reason the Electricity Supply Contract is terminated or expires then, in lieu of the aforesaid basic rental, the rental payable hereunder for the balance of the term hereof, commencing when the Electricity Supply Contract terminates or expires, shall be at the rate of $130,000 per annum payable in equal monthly installments in advance on the first day of each calendar month except that the amount payable as to any period less than one (1) month shall be prorated on a daily basis.

## Section 7.  Repayment of Construction Cost

(a)  The Lessee shall pay to the Port Authority toward the costs incurred by the Port Authority in the construction of the Substation Building, (including costs incurred under Section 4(d), the sum of Three Million Three Hundred and Fifty Thousand Dollars ($3,350,000) plus such additional amounts as may be payable pursuant to subparagraph (b) of this Section 7.  Payment by the Lessee to the Port Authority shall be made in installments in accordance with the following schedule:

| Amount Payable | Date Payable |
|---|---|
| $800,000 | Simultaneously with the execution of this Agreement |
| $550,000 | 60 days after the execution of this Agreement |
| $550,000 | 120 days after the execution of this Agreement |
| $800,000 | 180 days after the execution of this Agreement |
| $550,000 | 15 days after commencement of the term of the letting under this Agreement |

- 5 -

(b)  In the event that prior to or during the course of construction any of the following shall occur or arise:

(i)  The Lessee shall request or authorize changes or extra work, by which is meant construction or installation work or improvements other than as specifically described in the drawings, plans and specifications attached hereto as Exhibit B;

(ii)  subsurface or latent physical conditions shall be ascertained at the site differing from those indicated on or contemplated by said drawings, plans and specifications;

(iii)  physical conditions at the site of an unusual nature shall develop or be ascertained differing from those ordinarily encountered and generally recognized as inhering in work of the character described in said drawings, plans and specifications;

(iv)  unanticipated interference with construction shall develop due to forces of nature, acts of God, abnormal weather conditions or flooding;

then and in such event an amount equal to any increased charges necessarily incurred by the Port Authority attributable to or resulting from the above enumerated causes or conditions shall be paid by the Lessee to the Port Authority in addition to the payments described in subparagraph (a) above.  The Port Authority shall obtain from the contractor or contractors performing the construction an allocation of its or their said additional charges and there shall be payable from the Lessee to the Port Authority with respect to additional charges attributable to or resulting from the causes or conditions enumerated in subparagraph (i) above, the total of such additional charges plus 20% applied to such total and with respect to additional charges attributable to or resulting from the causes or conditions enumerated in subparagraphs (ii), (iii) or (iv) above there shall be payable from the Lessee to the Port Authority three-fourths (3/4) of the total of such charges plus 20% applied thereto, except that as to Port Authority Construction Contract No. WTC-130.029 entitled "Substation - Superstructure" there shall be payable from the Lessee to the Port Authority the total of any such additional charges plus 20% applied thereto.  Payment from the Lessee shall be due within fifteen (15) days after the Port Authority certifies in writing to the Lessee the amounts so due.  In the event the contractor or contractors cannot allocate the exact additional charges attributable to or resulting from the above enumerated causes or conditions then the said additional charges shall be deemed to be such amounts as are determined and approved by the Manager, Construction and Planning and the Chief Electrical Engineer of the Lessee; and any additional charges so determined shall be subject to the aforesaid 20% fee.

- 6 -

CED 52468

(c)  Payment by the Lessee hereunder shall not be subject to abatement, suspension or set-off (other than as specified in Section 19(f) hereof) for any cause or reason whatsoever and in the event the Lessee fails to pay any installment thereof when due and provided ten (10) days' written notice has been given by the Port Authority to the Lessee of its default in paying any such installment and such default has not been cured within said ten days, then the entire total unpaid amounts scheduled to be paid under this Section 7 shall be accelerated and shall become immediately due and payable to the Port Authority.

(d)  Except as provided in subdivision (f) of Section 19 hereof, in the event that this Agreement or the letting hereunder is terminated or cancelled by reason of default of the Lessee then and in such event the entire unpaid amounts scheduled to be paid under this Section 7 shall become immediately due and payable to the Port Authority and such amounts shall be paid by the Lessee on or before the effective date of termination or cancellation.

Section 8.    Air Space and Port Authority Construction

(a)  The Lessee recognizes that the Port Authority may construct wholly or partially on, above or about the Substation Building additional stories, structures, buildings or improvements of whatsoever design, size and purpose as the Port Authority may from time to time and at any time during the letting determine.  In connection therewith the Port Authority may use the roof surface of the Substation Building for the base or floor of such additional construction or for a plaza thereof or for some other purpose and may also use side wall surfaces of the Substation Building for support or for attachment thereto of additional structures or for decorative treatment thereto.  The Port Authority agrees that no such additional construction shall unreasonably impair, endanger or interfere with the continuous use of the Substation Building by the Lessee contemplated in Section 3 hereof.  Without limiting the generality of the foregoing or of any other provisions of this Agreement the Port Authority in performing such additional con- struction may, upon reasonable advance written notice given to the Lessee and subject to and in accordance with the reasonable safety and operating requirements of the Lessee, temporarily use portions of the Substation Building and may enter upon, over, under or through the Lessee's premises from time to time in order to perform such con- struction and the Lessee hereby consents to such entry, use and construction by the Port Authority.

(b)  The exercise of any or all of the foregoing rights by the Port Authority or its authorized contractors or agents shall not be or be construed to be an eviction of the Lessee nor be made the grounds of any abatement of rental nor any claim or demand for damages, consequential or otherwise.

- 7 -

## Section 9.   Ingress and Egress

The Lessee shall have the right of ingress and egress between the premises and the city streets or public ways outside the premises over such vehicular or pedestrian ways as may be designated on the plans and specifications referred to in Exhibit B hereof and also the right-of-way over such ways elsewhere on the Facility as may be made available from time to time by the Port Authority for use by the public.  Such rights shall be exercised in common with others having rights of passage within the Facility or within the buildings or structures or improvements referred to in Section 8 hereof.  The use of any such way shall be subject to the rules and regulations of the Port Authority which may hereafter be promulgated for the safe and efficient operation of the Facility.  The Port Authority may, at any time, temporarily or permanently close any such way, road or other area within the Facility presently or hereafter used as such, so long as a reasonably equivalent means of ingress and egress remains available to the Lessee.  The exercise of any or all of the foregoing rights by the Port Authority or its authorized contractors, agents or representatives shall not be or be deemed to be an eviction of the Lessee nor be made the grounds for any abatement of rental nor any claim or demand for damages, consequential or otherwise.  The Lessee shall not do or permit anything to be done which will interfere (except temporarily and reasonably) with the free access and passage of others to space adjacent to the premises or to the building, structure or improvement referred to in said Section 8 or to any ways, streets and areas near the premises.

Anything hereinafter contained to the contrary notwithstanding, the Lessee, insofar as the Port Authority has power to grant the same, shall have the right to install, operate, alter, maintain, and replace at Lessee's expense electrical feeders and associated facilities in any portion of Barclay and Washington Streets that the Port Authority may now own or hereafter acquire, so that such feeders may be and remain connected with the Company's electrical system in the public streets.

## Section 10.   Governmental and Other Requirements

(a)  In addition to all other rentals and fees payable under this Agreement, the Lessee shall on demand pay or reimburse the Port Authority for any tax, assessment, levy or charge, general or special, ordinary or extraordinary, of whatever name, nature or kind which, during the term of the letting hereunder, may be levied, assessed, imposed or charged by a taxing or governmental authority upon the Substation Building or on any buildings, structures or improvements erected or made on the premises by the Lessee.  The foregoing provision shall include the pro rata portion applicable to the Substation Building of any assessment, levy, charge or payment arising under any present agreement with the taxing authority or municipality and the pro rata portion applicable to the Substation Building of any assessment, levy, charge or payment of general applicability to the buildings in the World Trade Center, resulting from any agreement hereafter made between the Port Authority and the taxing authority or municipality.  The foregoing provision shall not be deemed to be a submission by the Port Authority or the Lessee to the application to either of them or to the Substation Building or to such additional buildings, structures or improvements of any of the foregoing taxes, assessments, levies, payments or charges

- 8 -

(b)   The Lessee shall procure from all governmental authorities having jurisdiction of the operations of the Lessee hereunder all licenses, certificates, permits or other authorization which may be necessary for the conduct of such operations.

(c)   The Lessee shall promptly observe, comply with and execute the provisions of any and all present and future governmental laws, rules and regulations, requirements, orders and directions which may pertain or apply to the operations of the Lessee on the premises or its occupancy thereof and the Lessee shall in accordance with and subject to the provisions of Section 22 hereof, make any and all structural or non-structural improvement alterations or repairs of or to the premises that may be required at any time hereafter by any such present or future law, rule, regulation, requirement, order or direction.

(d)   The obligation of the Lessee to comply with governmental requirements is provided herein for the purpose of assuring proper safeguards for the protection of persons and property in or near the Facility and proper operation by the Lessee.  Such provision herein is not to be construed as a submission by the Port Authority to the application to itself of such requirements or any of them.

Section 11.   Rules and Regulations

(a)   The Lessee shall promptly observe and obey (and compel its officers, employees and others on the premises with its consent to observe and obey) the rules and regulations which the Port Authority may from time to time promulgate for reasons of safety, health or preservation of property or for the maintenance of the good and orderly appearance of the premises or for the safe or efficient operation of the Facility provided, however, that such rules and regulations shall not unreasonably impair the efficient operation of the Substation as contemplated in Section 5 hereof.

(b)   If a copy of the Rules and Regulations is not attached to this Agreement then the Port Authority as soon as practicable will notify the Lessee thereof by delivery of a copy to the Lessee or by making a copy available at the Office of the Secretary of the Port Authority.  The Port Authority agrees that except in cases of emergency, it will give notice to the Lessee of further or new rules or regulations at least ten (10) days before the Lessee shall be required to comply therewith.

- 9 -

(c)  No statement or provision in the said Rules and Regulations shall be deemed a representation or promise by the Port Authority that the services or privileges described shall be or remain available, or that the charges, prices, rates or fees stated therein shall be or remain in effect throughout the letting, all of the same being subject to change by the Port Authority from time to time whenever it deems a change advisable.

Section 12.   Signs

(a)  Except with the prior consent of the Port Authority, the Lessee shall not erect, maintain or display any signs, emblems or lettering or any advertising, posters or any similar devices on the exterior portions of the premises or in the premises so as to be visible from outside the premises, nor shall any such be erected, maintained or displayed elsewhere at the Facility.

(b)  Upon demand by the Port Authority, the Lessee shall remove, obliterate, or paint out any and all signs, emblems, lettering, advertising, posters and similar devices placed by the Lessee without the Port Authority's consent on the exterior of the premises or on those portions of the premises visible from outside the premises or elsewhere on the Facility; and at the expiration or earlier termination of the letting, the Lessee shall so perform, whether so visible or not, and shall restore the premises and the Facility to the same condition as prior to such placement.  In the event of a failure on the part of the Lessee so to remove, obliterate or paint out any such or so to restore the premises and the Facility, the Port Authority may perform the necessary work and the Lessee shall pay the costs thereof to the Port Authority on demand.

Section 13.   Method of Operation

(a)  The Lessee shall conduct its operations hereunder in an orderly and proper manner and so as not to annoy, disturb or be offensive to others at the Facility.  The Lessee shall take all measures necessary to (1) eliminate vibrations tending to damage any equipment, structure, building or portion of a building which now or hereafter is located on, over or under the premises or which is located elsewhere at the Facility; and (2) to keep the sound level of its operations as low as feasible.

(b)  The Lessee shall control the conduct, demeanor and appearance of its employees and others on the premises with its consent, and upon objection from the Port Authority concerning the conduct, demeanor and appearance of any such, shall immediately take all steps necessary to remove the cause of the objection.  If the Port Authority deems it advisable for security reasons, the Lessee shall provide and its employees shall wear or carry badges or other suitable means of identification.

- 10 -

CED 41668

(c)  The Lessee shall be responsible for the removal from the premises and the Facility of all garbage, debris and other waste materials (either solid or liquid) arising out of its occupancy of the premises or out of its operations elsewhere at the Facility.  The Lessee shall use extreme care when effecting removal of all such waste, shall effect such removal at such time and by such means as first approved by the Port Authority and shall in no event make use of any facilities or equipment of the Port Authority except with the prior consent thereof.  Without limiting t generality of the foregoing, the Lessee shall not dispose of nor permit anyone to dispose of any liquid or solid industrial waste materials by means of toilets, manholes, sanitary-sewers or storm sewers in the premises or elsewhere at the Facility.

(d)  The Lessee shall not commit any nuisance or permit its employees or others on the premises with its consent to commit or create or continue or tend to create any nuisance on the premises or in or near the Facility.

(e)  The Lessee shall not cause or permit to be caused or produced upon the premises, to permeate the same or to emanate therefrom any unusual, noxious or objectionable smoke, gases, vapors or odors.

(f)  The Lessee shall not do or permit to be done any act or thing at the Facility which shall or might subject the Port Authority to any liability or responsibility for injury to any person or persons or damage to any property.

(g)  The Lessee shall not overload any floor, roof, land surface or pavement at the premises or elsewhere at the Facility and shall repair, replace or rebuild any such, including but not limited to supporting members, damaged by overloading.

(h)  From time to time and as often as required by the Port Authority, the Lessee shall conduct pressure, water-flow, and other appropriate tests of the fire extinguishing system and fire fighting equipment, on the premises, whether furnished by the Port Authority or by the Lessee.  The Lessee shall keep all fire-fighting and fire extinguishing equipment well supplied with a fresh stock of chemicals and with sand, water or other materials as the case may be for the use of which such equipment is designed, and shall train its employees in the use of all such equipment, including in such training periodic drills.

(1)  The Lessee shall not install, maintain or operate or permit the installation, maintenance or operation on the premises of any vending machine or device designed to dispense or sell food, beverage products or merchandise of any kind without the prior approval of the Port Authority.  The Port Authority, by itself or by

contractors, lessees or permittees, shall have the exclusive right to install, maintain and receive and retain the revenues from all coin-operated or other machines or devices for the sale of merchandise of all types, or for the rendering of services (including telephone pay stations), which may be operated on the premises, provided, however, that no such machine or device shall be installed except upon the request of the Lessee.

(j) The Lessee shall not do or permit to be done any act or thing upon the premises or at the Facility which (1) will invalidate or conflict with any insurance policies covering the premises or any part thereof, or the Facility, or any part thereof or (2) which, in the opinion of the Port Authority, may constitute an extra hazardous condition so as to increase the risks normally attendant upon the operations permitted by this Agreement, or (3) which will increase the rate of any insurance including fire, extended coverage or rental insurance on the Facility, or any part thereof or upon the contents of any building thereon, provided, however, that the operation of Lessee's Substation as contemplated and required in accordance with this Agreement and with the plans, specifications and standards referred to in Section 5(c) hereof shall not be deemed to be the doing of any of the foregoing acts or things. The Lessee shall promptly observe, comply with and execute the provisions of any and all present and future rules and regulations, requirements, orders and directions of the New York Fire Insurance Rating Organization or of any other board or organization exercising or which may exercise similar functions, which may pertain or apply to the operations of the Lessee on the premises, and the Lessee shall, subject to and in accordance with the Section of the Agreement entitled "Construction by the Lessee", make any and all structural and non-structural improvements, alterations or repairs of the premises that may be required at any time hereafter by any such present or future rule, regulation, requirement, order or direction. If by reason of any failure on the part of the Lessee to comply with the provisions of this subparagraph any insurance, including fire, extended coverage or rental insurance rate on the Facility or any part thereof, shall at any time be higher than it otherwise would be, then the Lessee shall pay to the Port Authority that part of all premiums paid by the Port Authority which shall have been charged because of such violation or failure by the Lessee. Without limitation of the foregoing the parties agree to consult together concerning any such rule, regulation, requirement, order or direction which the Lessee considers to be unreasonable and to cooperate in respect to the taking of appropriate steps to resolve the matter.

(k) The Lessee shall not do or permit to be done anything which may interfere with the effectiveness or accessibility of the utility, mechanical, electrical or other system installed or located at the premises in accordance with this Agreement by the Port Authority, its contractors or agents or installed or located elsewhere at the Facility.

CED 468

## Section 14.    Indemnity; Liability Insurance

(a)  The Lessee shall indemnify and hold harmless the Port Authority, its Commissioners, officers, agents and employees from (and shall reimburse the Port Authority for any cost or expense including without limitation thereto any legal expenses or costs incurred in connection with the defense of) all claims and demands of third persons including but not limited to those for death, for personal injuries or for property damages, arising out of (i) the use or occupancy of the premises by the Lessee or out of any of the acts or omissions of the Lessee, its officers, employees, agents, representatives, contractors and invitees where such acts or omissions are on the premises or (ii) any acts or omissions of the Lessee, its officers, employees, agents and representatives in connection with such use and occupancy of the premises where such acts or omissions are elsewhere at the Facility.  If so requested, the Lessee shall at its own expense defend any suit based upon any such claim or demand even if such suit, claim or demand is groundless, false or fraudulent, provided, however, that the Lessee shall not without the express prior written consent of the General Counsel of the Port Authority raise any defense involving in any way the immunity of the Port Authority or the provisions of any statutes respecting suits against the Port Authority or the jurisdiction of the tribunal with respect to the Port Authority.

(b)  The Lessee represents to the Port Authority that it maintains a policy or policies of comprehensive general liability insurance, including coverage for explosion, collapse and underground damages and automotive liability, and including full contractual liability coverage covering the obligations assumed by the Lessee under paragraph (a) above, which policy or policies cover all of the operating properties of the Lessee in amounts, in the aggregate, totalling at least $25,000,000, from which there is deductible, as to any occurrence or claim, the sum of $500,000.  The Lessee shall furnish the Port Authority with appropriate evidence of the existence of the foregoing insurance coverage promptly after the execution of this Agreement, and the Lessee, thereafter, shall provide further certification evidencing the continuance of such insurance during the term of this letting, such certification to be furnished at least ten days prior to the expiration of expiring policies.

The Lessee agrees that it will not diminish the foregoing insurance coverage without giving 30 days advance written notice to the Port Authority of the changes it proposes to make in such coverage.  If the Port Authority shall not be

- 13 -

satisfied with the proposed changes, it shall have the right, at its election, to serve a written demand upon the lessee to the effect that the Lessee shall provide and maintain, at its expense, a policy or policies of comprehensive general liability insurance, including the types of coverage hereinbefore described, specifically relating to the premises herein demised, such policy or policies to be written with limits not lower than the following:

(1)  Bodily-injury liability:
     For injury or wrongful death
     to one person:
     For injury or wrongful death                    $1,000,000
     to more than one person
     from any one accident
                                                      $1,000,000

(ii)  Property-damage liability:
      For all damages arising out
      of injury to or destruction of
      property in any one accident:                   $1,000,000

(iii)  Aggregate products liability:
                                                      $1,000,000

Upon receipt of the foregoing notice from the Port Authority, the lessee shall procure insurance conforming therewith, in lieu of the blanket type coverage hereinbefore described and shall provide the Port Authority with an appropriate certificate evidencing the existence thereof.  Thereafter, the lessee shall provide the Port Authority with further certificates (or certified copies of insurance policies conforming hereto) at least ten days prior to the expiration of each expiring policy.  Each such copy or certificate of insurance shall contain a valid provision or endorsement that the policy may not be cancelled, terminated, changed or modified without giving fifteen days written notice in advance to the Port Authority.  If at any time any of such policy shall be or become unsatisfactory to the Port Authority as to form or substance or if any of the carriers issuing such policies shall be or become unsatisfactory to the Port Authority, the Lessee shall promptly obtain a new and satisfactory policy in replacement.  If the Port Authority so requests, the Lessee shall cause the Port Authority to be named as an insured under such policies and in the event the Port Authority is so named as an insured thereunder, the Lessee shall use its best efforts to obtain an endorsement of the policy or policies providing that the insurance carrier shall not without obtaining express advance permission from the General Counsel of the Port Authority, raise any defense involving in any way the immunity of the Port Authority or the provisions of any statute respecting suits against the Port Authority or the jurisdiction of the tribunal with respect to the Port Authority.

- 14 -

CED-568

## Section 15.  Care, Maintenance and Repair by the Lessee

(a)  Except as otherwise provided in Section 16 of this Agreement the Lessee shall throughout the term of this Agreement assume the entire responsibility and shall relieve the Port Authority from all responsibility for all care, repair, replacement and rebuilding whatsoever in the premises whether such repair, maintenance, replacement or rebuilding be ordinary, extraordinary, partial or entire, structural or otherwise and without limiting the generality of the foregoing, the Lessee shall:

(1)  Keep the premises, including the Substation Equipment, in a clean and orderly condition and appearance;

(2)  With respect to the premises and all parts thereof, including, but without limitation thereto, such of the following as are or may be during the term of the letting located in or on the premises: fences, the exterior and interior of the building walls, the exterior and interior and operating mechanisms of and attachments to windows and skylights, screens, roofs, foundations, steel work, columns, the exterior and interior and operating mechanisms of and attachments to doors, partitions, floors, ceilings, inside and outside paved and unpaved areas, glass of every kind, and the utility, mechanical, electrical and other systems installed for the benefit or use of the Lessee; take the same good care of the premises that would be taken by a reasonably prudent owner who desired to keep and maintain the same so that at the expiration or termination of the letting and at all times during the letting, the same (or a reconstruction of all or any part thereof) will be in as good condition as at the commencement thereof (or, in the case of improvements made during the letting hereunder, in as good condition as at the time of the installation or construction thereof), except for reasonable wear which does not adversely affect the watertight condition or structural integrity of the Substation Building or other structures on the premises erected by the Lessee or adversely affect the appearance and the efficient and the proper utilization of any part of the premises.  To that end, the Lessee shall make frequent periodic inspections and, from time to time as the necessity therefor arises and regardless of the cause of the condition requiring the same, the Lessee shall perform all necessary preventive maintenance including but not limited to painting (in colors which have been approved by the Port Authority), and the Lessee shall promptly make all necessary repairs and replacements and do all necessary rebuilding with respect

- 15 -

to the premises and all parts thereof (in
total destruction) without regard to the
and whether or not caused by fire or other
all of which shall be in quality equal to
in materials and workmanship and regardless        ...ether
such repairs and replacements are structural or non-
structural, ordinary or extraordinary, foreseen or
unforeseen.

(3)  The Lessee shall promptly wipe up all
oil, grease, lubricants, or other inflammable liquids
and substances and all liquids and substances having
a corrosive or detrimental effect on the floor or other
surfaces of the premises.  The Lessee shall maintain,
repair and replace any curb cuts and driveways leading to
its premises and shall keep the same clean and free of
snow and ice.

(4)  The Lessee shall supply, replace,
install, repair, maintain and keep clean all grease
traps in all drainage pipes and oil separators used by
it in its operations hereunder whether such pipes and
oil separators are located on the premises or elsewhere
at the Facility.

(b)  In the event the Lessee fails to commence so to
maintain, clean, repair, replace, rebuild or paint within a period
of thirty (30) days after notice from the Port Authority so to do in
the event that the said notice specifies that the required work to be
accomplished by the Lessee includes maintenance and/or repair other
than preventive maintenance; or within a period of one hundred twenty
(120) days if the said notice specifies that the work to be accom-
plished by the Lessee involves preventive maintenance only; or fails
diligently to continue to completion the repair, replacement, rebuildin
or painting of all of the premises required to be repaired, replaced,
rebuilt or painted by the Lessee under the terms of this Agreement, the
Port Authority may, at its option, and in addition to any other remedie
which may be available to it, repair, replace, rebuild or paint all or
any part of the premises included in the said notice, and the cost
thereof shall be payable by the Lessee upon demand.  Nothing herein
contained shall be deemed to require the Port Authority to notify the
Lessee of needed repairs or replacement or of required maintenance or
preventive maintenance and the Lessee shall be solely responsible for
any failure to perform needed maintenance, repair or restoration, re-
building or painting.

Section 16.  Responsibility for Other Uses of Premises

Anything in this Agreement to the contrary notwith-
standing it is expressly understood and agreed that the obligations
assumed by the Lessee under this Agreement with respect to maintenance,
repair, rebuilding, restoration or indemnity shall not extend to
causes or conditions arising out of the use or occupancy of the
premises or of the space above or about the premises by the Port
Authority, its employees, agents or contractors; further the

- 16 -

CED-568

responsibility of the Lessee for the maintenance, repair or rebuilding of the Substation Building shall not include any other structure or buildings erected by others than the Lessee unless repair or re-construction thereof is necessitated by act or fault of the Lessee. The Port Authority shall reimburse the Lessee for any expense incurred by the Lessee in maintaining, repairing, replacing or re-building the Substation Building or the Lessee's Substation Equipment where such expenses are incurred by reason of damage to the Substation Building or the Lessee's Substation Equipment caused by the acts or omissions of the Port Authority or its agents, contractors or employees in connection with the construction or maintenance of the stories, structures, buildings or improvements described in Section 8 hereof. The responsibility of the Lessee for major repairs or re-building shall not extend to the portion of the foundations, bearing columns, roof reinforcement and other structural members and facilities incorporated in the Substation Building for the support or accom-modation of the stories, structures, buildings or improvements described in Section 8 hereof unless the Port Authority shall reimburse the Lessee for the expense thereof to the extent that such expense is not covered by insurance.

Section 17.    Fire Insurance

(a)  During the term of this Agreement the Port Authority, at the Lessee's expense, shall insure and keep insured the Substation Building to the extent of 100% of the replacement value thereof against such hazards or risks as may now or in the future be included under the standard form of fire insurance policy in use in New York from time to time during the letting and the standard form of extended coverage endorsement prescribed as of the effective date of such insurance by the rating organization having jurisdiction.  All such policies of insurance and renewals thereof shall be taken out in the name of the Port Authority and shall provide that the loss, if any, shall be ad-justed with and payable to the Port Authority.  The proceeds of such insurance shall be applied by the Port Authority in accordance with the provisions of Section 18 hereof.  The Port Authority shall not be deemed to have warranted the solvency of any insurance company and shall not be liable for any losses resulting from such insolvency.

(b)  The Port Authority may from time to time and at any time voluntarily elect on not less than ten days' notice to the Lessee to become a self-insurer as to any part or all of the loss or damage resulting from the hazards or risks that would be insured against under the insurance policies described in subparagraph (a) above; the Port Authority shall, if and to the extent that it has elected to self-insure, make available out of its funds, in the event of such loss or damage, an amount equivalent to that which would have been paid by an insurance carrier under the same circumstances.

(c)  The Lessee shall pay the Port Authority annually an amount equal to the insurance premium or premiums paid by the Port Authority allocable to the insurance coverage provided under

- 17 -

CED 468

paragraph (a) above and if the Port Authority shall elect to
self-insure as to any part or all of such coverage, the Lessee
shall pay annually an amount equal to the allocable portion of
such insurance premiums which would have been paid by the Port
Authority if it had actually insured.

(d)  Notwithstanding the provisions of subparagraph
(a) above, in the event the Port Authority determines that it is
no longer appropriate for it to obtain or provide the insurance
referred to above, it shall give thirty (30) days' notice to the
Lessee requiring the Lessee to obtain such coverage or self-
insurance coverage and the Lessee shall forthwith secure the same
and deliver to the Port Authority certificates or binders evidencing
the same.  Any such policy shall contain an endorsement obligating
the insurance company to furnish the Port Authority ten (10) days'
advance notice of the cancellation of the insurance evidenced by
said policy or certificate.  Renewal policies or certificates shall
be delivered to the Port Authority at least fifteen (15) days before
the expiration of the insurance which such policies are to renew.
The policies of insurance under this paragraph (d) and renewals
thereof shall insure the Port Authority and the Lessee as their
interests may appear, and shall provide that the loss, if any,
shall be adjusted with and payable to the Port Authority.  Regard-
less of the person whose interests are insured the proceeds of
all such policies shall be applied by the Port Authority in
accordance with the provisions of Section 18 hereof.

(e)  The word "insurance" and all other references
to insurance in said Section 18 shall be construed to refer to
the insurance which is the subject matter of this Section and
to refer to such insurance only.

(f)  In the event the premises or any part thereof
shall be damaged by any casualty against which insurance is or
shall be carried pursuant to this Section, the Lessee shall promptly
furnish to the Port Authority such information and data as may be
necessary to enable the Port Authority to adjust the loss.

CED-568

## Section 18.  Damage or Destruction of Premises

(a)  Removal of Debris - If the premises or any part thereof, shall be damaged by fire, the elements, the public enemy or other casualty, the Lessee shall promptly remove all debris resulting from such damage from the premises, and to the extent, if any, that the removal is covered by insurance, the proceeds thereof shall thereafter be made available to the Lessee for such purpose.

(b)  Minor Damage - If the premises or any part thereof shall be damaged by fire, the elements, the public enemy, or other casualty and rendered untenantable or unusable for a period of ninety (90) days or less the premises shall be diligently repaired or rebuilt in accordance with the plans and specifications for the premises as they existed prior to such damage by and at the expense of the Lessee and if such damage is covered by insurance the proceeds thereof shall thereafter be made available to the Lessee for that purpose.

(c)  Major Damage to or Destruction of the Premises - If the premises or any part thereof shall be destroyed or so damaged by fire, the elements, the public enemy or any other casualty as to be untenantable or unusable for more than ninety (90) days, then the Lessee shall proceed with due diligence to make and perform the necessary repairs, rebuilding or replacements and to restore such premises in accordance with the plans and specifications for the premises as they existed prior to such destruction or damage or with the approval in writing of the Port Authority to make such other repairs, replacements, rebuilding or changes as may be desired by the Lessee.  If such destruction or damage is covered by insurance, the proceeds thereof shall thereafter be made available to the Lessee for the foregoing purposes.  Notwithstanding the foregoing provisions, in the event of such damage or destruction the Lessee shall have the option on sixty (60) days' notice to the Port Authority given not later than sixty (60) days after such damage or destruction to elect not to rebuild in which event this Agreement and the letting hereunder shall cease and expire at the expiration of said sixty (60) day notice as fully and completely as if such date were the original expiration date of the letting under this Agreement.  In such event the Port Authority shall retain the proceeds of the insurance solely for its own account.

(d)  In the event of a partial or total destruction of the premises and any failure of the Lessee to remove therefrom all debris (or property of the Lessee after temination of the letting) the Port Authority may remove such property to a public warehouse for deposit or retain the same in its possession and sell the same at public auction the proceeds of which shall be applied first to the expenses of removal, storage and sale, second to any sums owed by the Lessee to the Port Authority, with any balance remaining to be paid to the Lessee; if the expenses of such removal, storage and sale shall exceed the proceeds of sale, the Lessee shall pay such excess to the Port Authority on demand.

(e)  The parties hereto hereby stipulate that neither the provisions of Section 227 of the Real Property Law of New York nor those of any similar statute shall extend or apply to this Agreement. The Lessee agrees that no damage or destruction of the premises shall entitle the Lessee to any abatement in the rental, fees or charges payable by it under this Agreement during the continuance of the term hereof nor affect the rates and charges payable by the Port Authority for electricity service under the Electricity Supply Contract.

Section 19.  <u>Condemnation</u>

(a)  Except as provided in paragraph (d) below, in any action or other proceeding by any governmental agency or agencies for the taking for a public use of any interest in all or part of the premises, or in case of any deed or other conveyance as a consequence of such action or proceeding (all of which are in this Section referred to as "taking or conveyance"), the Lessee shall not be entitled to assert any claim to any compensation, award or part thereof made or to be made therein or therefor or any claim to any consideration or rental or any part thereof paid therefor, or to institute any action or proceeding or to assert any claim against such agency or agencies or against the Port Authority for any such taking or conveyance, it being understood and agreed between the parties hereto that the Port Authority shall be entitled to all compensation or awards made or to be made or paid, and all such consideration or rental shall be free of any claim or right of the Lessee.

(b)  In the event that the taking or conveyance covers the entire premises, then this Agreement shall terminate as of the date possession is taken by such agency from the Port Authority in the same manner and with the same effect as if the said date were the original date fixed by this Agreement for the expiration of the term of the letting.  The Lessee hereby agrees to deliver possession of the premises taken or conveyed in the same condition as that required for the delivery of the premises upon the date originally fixed by this Agreement for the expiration of the terms of the letting.

(c)  In the event that the taking or conveyance covers only a part of the premises then this Agreement shall terminate as to such part as of the date possession is taken by such agency from the Port Authority in the same manner and with the same effect as if the said date were the original date fixed by this Agreement for the expiration of the term of the letting.  In the event, however, that such taking or conveyance covers a portion of the premises which is necessary for the operation of the Substation then the Lessee or the Port Authority shall each have the right by prompt written notice to terminate the letting hereunder effective as of the date possession is so taken or conveyed, such termination to be effective as if the said date were the original date fixed by this Agreement for the expiration of the term of the letting.

(d)  In the event of a taking or conveyance as defined in paragraph (a) hereof or a termination as provided in paragraph (c) hereof the Port Authority shall pay to the Lessee the unamortized capital investment, if any, of the Lessee in the improvements

- 20 -

CED-568

described in Section 4 hereof for the portion of the premises so taken or conveyed, provided, however, that if the Port Authority or the Lessee shall elect to terminate the letting pursuant to subparagraph (c) hereof then in such event the Port Authority shall pay to the Lessee (subject to the limitations contained in the following sentence) the unamortized capital investment of the Lessee in the entire improvements described in Section 4 hereof. Any sums payable to the Lessee as aforesaid shall be limited to the extent of the amounts covering the foregoing which shall have actually been paid to the Port Authority by the governmental agency or agencies, including consequential damages to the improvements described in Section 4 hereof, it being understood that the Lessee shall have no claim against the Port Authority by reason of insufficiency or claimed insufficiency of the amounts so paid to the Port Authority.

(e)  The term "unamortized capital investment" shall mean an amount determined by multiplying the total payments made by the Lessee for construction of the improvements described in Section 7 hereof) by a fraction, the numerator of which shall be the number of whole calendar months in the term of the letting under this Agreement subsequent to the effective date of such taking or conveyance and the denominator of which shall be six hundred (600).

(f)  No taking or conveyance pursuant to the provisions of this Section shall be or be construed to be an eviction of the Lessee or a breach of this Agreement or be made the basis for any claim by the Lessee against the Port Authority for damages consequential or otherwise or for any abatement or reduction in any rentals or fees that may be payable to the Port Authority by the Lessee, provided, however, that if said taking is effective prior to payment to the Port Authority by the Lessee of the total construction costs described in Section 7 hereof, then the Lessee shall not be required to make any further payments to the Port Authority toward the said cost of construction and, in determining the unamortized capital investment of the Lessee, cost of construction shall mean solely the total of the payments actually made to the Port Authority by the Lessee pursuant to Section 7 hereof.

(g)  The foregoing shall have no application to the Substation Equipment, apparatus and devices, and the supporting facilities therefor, which are installed in the Substation Building by or on behalf of the Lessee, and which, under the provisions of this Agreement are and shall remain the property of the Lessee.

Section 20.    Services or Utilities

(a)  The Port Authority shall not be required to furnish to the premises any services or utilities. The Lessee shall make its own arrangements for and be responsible to pay for any services or utilities it may require in connection with its use and occupancy of the premises, but the Port Authority shall permit reasonable

- 21 -

CED-568

access to the public streets for any pipes or connecting facilities needed for the supply of such services or facilities. If the Lessee does not use its own employees for the maintenance, repair, cleaning and janitorial services at the premises, it shall advise the Port Authority in advance of the contractor retained by it to perform such services.

(b)  If any federal, state, municipal or other govern-mental body shall assess, levy, impose or increase any rent, charge, fee, tax or assessment on the Port Authority for or in connection with any service, system, or utility supplied to the premises or the Lessee (including but not limited to any sewer rent or charge for any sewer systems), the Lessee shall at any time and from time to time, upon notice given by the Port Authority to the Lessee pay, in accordance with the said notice, such rent, charge, fee, tax or assessment, or increase thereof (or the portion of any of the same allocable to the premises or to the operations of the Lessee), either directly to the governmental body or directly to the Port Authority.

Section 21.    Assignment and Sublease

(a)  The Lessee covenants and agrees that it will not sell, convey, transfer, assign, mortgage or pledge this Agreement or any part thereof, or any rights created thereby or the letting there-under or any part thereof except with the prior written consent of the Port Authority.

(b)  The Lessee shall not sublet the premises or any part thereof.

(c)  If the Lessee assigns, sells, conveys, transfers, mortgages, pledges or sublets in violation of subdivisions (a) or (b) of this Section or if the premises are occupied by anybody other than the Lessee, the Port Authority may collect rent from any assignee, sublessee or anyone who claims a right to this Agreement or letting or who occupies the premises and shall apply the net amount collected to the rental herein reserved; and no such collection shall be deemed a waiver by the Port Authority of the covenants contained in subdivisions (a) and (b) of this Section nor an acceptance by the Port Authority of any such assignee, sublessee, claimant or occupant as tenant, nor a release of the Lessee by the Port Authority from the further performance by the Lessee of the covenants contained herein.

(d)  The Lessee further covenants and agrees that it will not use or permit any person whatsoever to use the premises or any portion thereof for any purpose other than as provided in Section 3 of this Agreement.

CED 41668

## Section 22.  Construction by the Lessee

Except as otherwise specifically authorized in
Section 5 hereof, the Lessee shall not make any structural
alterations or additions to or replacements of the Substation
Building nor make any alterations therein which would be inconsis-
tent with or interfere with the construction, operation, maintenance
repair or improvement of the additional construction contemplated
under Section 8 hereof, unless the same shall have been approved
in advance in writing by the Port Authority. Any construction,
alteration, addition, repair or replacement made with or without
such approval and unless the approval of the Port Authority shall
expressly provide otherwise shall immediately become the property
of the Port Authority and the Lessee shall have no right to remove
the same either during the letting or at the expiration thereof
unless the Port Authority at any time prior to the expiration of
the term of the letting or any extension thereof or within sixty
(60) days after expiration or earlier termination of the term of
the letting shall give notice to the Lessee to remove the same in
which case the Lessee agrees to remove the same or in the case of
unapproved work to cause the same to be changed to the satisfaction
of the Port Authority.  In case of any failure on the part of the
Lessee to comply with such notice, the Port Authority may effect
the removal or change and the Lessee hereby agrees to pay the cost
thereof to the Port Authority upon demand.

## Section 23.  Additional Rent and Charges

(a)  If the Port Authority has paid any sum or sums
or has incurred any obligations or expense which the Lessee has
agreed to pay or reimburse the Port Authority for, or if the
Port Authority is required or elects to pay any sum or sums or
incurs any obligations or expense by reason of the failure,
neglect or refusal of the Lessee to perform or fulfill any one
or more of the conditions, covenants or agreements contained in
this Agreement or as a result of an act or omission of the
Lessee contrary to the said conditions, covenants and agreements,
the Lessee shall pay to the Port Authority the sum or sums so
paid or the expense so incurred, including all interest, costs,
damages and penalties and the same may be added to any install-
ment of rent thereafter due hereunder, and each and every part of
the same shall be and become additional rent, recoverable by the
Port Authority in the same manner and with like remedies as if
it were originally a part of the rental as set forth in Section
6 hereof.

CED-568

(b)  For all purposes under this Section, in any suit, action or proceeding of any kind between the parties hereto, any receipt showing any payment of a sum or sums by the Port Authority for any work done or material furnished shall be <u>prima facie</u> evidence against the Lessee that the amount of such payment was necessary and reasonable.  Should the Port Authority elect to use its operating and maintenance staff in performing any work and to charge the Lessee with the cost of same, any time report of any employee of the Port Authority showing hours of labor or work allocated to such work, or any stock requisition of the Port Authority showing the issuance of materials for use in the performance thereof, shall likewise be <u>prima facie</u> evidence against the Lessee that the amount of such charge was necessary and reasonable.

(c)  The term "cost" in this Agreement shall mean and include (unless otherwise defined): (1)  Payroll costs, including but not limited to payroll taxes, contributions to the Retirement System, the cost of participation in other pension plans or systems, insurance costs, sick leave pay, holiday, vacation and authorized absence pay; (2)  Cost of materials and supplies used;  (3)  Payments to contractors; (4)  Any other direct costs; and (5)  25% of the sum of the foregoing.

Section 24.    <u>Rights of Entry Reserved</u>

(a)  The Port Authority, by its officers, employees, agents, representatives and contractors shall have the right at all reasonable times, upon reasonable advance notice to the Lessee (except in cases of emergency) and subject to the Lessee's reasonable safety requirements, to enter upon the premises for the purpose of inspecting the same, for observing the performance by the Lessee of its obligations under this Agreement, and for the doing of any act or thing which the Port Authority may be obligated or have the right to do under this Agreement.

(b)  Without limiting the generality of the foregoing, the Port Authority, by its officers, employees, agents, representatives, and contractors, and furnishers of utilities and other services accompanied by an authorized and qualified representative of the Lessee, shall have the right, for its own benefit, for the benefit of the Lessee, or for the benefit of others than the Lessee at the Facility, to maintain existing and future utility, mechanical, electrical and other systems and to enter upon the premises at all times to make such repairs, replacements or alterations as may, in the opinion of the Port Authority, be deemed necessary or advisable and, from

- 24 -

CED-52468

time to time, to construct or install over, in or under the premises new systems or parts thereof, and to use the premises for access to other parts of the Facility otherwise not conveniently accessible; provided, however, that in the exercise of such rights of access, repair, alteration or new construction the Port Authority shall not unreasonably impair, endanger or interfere with the continuous use of the Substation Building by the Lessee contemplated in Section 3 hereof. The Lessee shall designate an office and telephone number and a substitute office and telephone number where an authorized representative of the Lessee can be contacted seven days a week, twenty-four hours a day and the Lessee agrees that a representative will respond to any call or contact from the Port Authority and arrive at the premises with all reasonable dispatch. Nothing herein contained shall be deemed to limit or affect the provisions of Section 8 hereof.

(c)  Nothing in this Section shall or shall be construed to impose upon the Port Authority any obligations so to construct or maintain or to make repairs, replacements, alterations or additions or shall create any liability for any failure so to do.

(d)  At any time and from time to time during ordinary business hours within the three (3) months next preceding the expiration of the letting, the Port Authority, by its agents and employees, whether or not accompanied by prospective lessees, occupiers or users of the premises, shall have the right to enter on the premises for the purpose of exhibiting and viewing all parts of the same, upon reasonable advance notice to the Lessee and subject to the Lessee's safety requirements.

(e)  If, during the last month of the letting, the Lessee shall have removed all or substantially all its property from the premises, the Port Authority may immediately enter and alter, renovate and redecorate the premises.

(f)  The exercise of any or all of the foregoing rights by the Port Authority or others shall not be or be construed to be an eviction of the Lessee nor be made the grounds for any abatement of rental nor any claim or demand for damages, consequential or otherwise.

Section 25.  Limitation of Rights Granted

No greater rights or privileges with respect to the use of the premises or the Facility or any part thereof are granted or intended to be granted to the Lessee by this Agreement or by any provision hereof than the rights and privileges expressly and specifically granted.

- 25 -

CED-568

Section 26.    <u>Termination</u>

(a)  If any one or more of the following events shall occur, that is to say:

(1)  The Lessee shall become insolvent, or shall take the benefit of any present or future insolvency statute, or shall make a general assignment for the benefit of creditors, or file a voluntary petition in bankruptcy or a petition or answer seeking an arrangement or its reorganization or the re-adjustment of its indebtedness under the federal bankruptcy laws or under any other law or statute of the United States or of any State thereof, or consent to the appointment of a receiver, trustee, or liquidator of all or substantially all of its property; or

(2)  By order or decree of a court the Lessee shall be adjudged bankrupt or an order shall be made approving a petition filed by any of its creditors or, by any of its stockholders, seeking its reorganization or the readjustment of its indebtedness under the federal bankruptcy laws or under any law or statute of the United States or of any State thereof; or

(3)  A petition under any part of the federal bankruptcy laws or an action under any present or future insolvency law or statute shall be filed against the Lessee and shall not be dismissed within sixty (60) days after the filing thereof; or

(4)  By or pursuant to, or under authority of any legislative act, resolution or rule, or any order or decree of any court or governmental board, agency or officer, a receiver, trustee, or liquidator, except a temporary government administrator appointed during a war emergency, shall take possession or control of all or substantially all of the property of the Lessee, and such possession or control shall continue in effect for a period of sixty (60) days; or

(5)  The letting or the interest of the Lessee under this Agreement shall other than by merger, consolidation or similar corporate reorganization be transferred to, pass to or devolve upon, by operation of law or otherwise, any other person, firm or corporation; or

(6)  The Lessee shall voluntarily abandon, desert or vacate the premises or permanently discontinue use of the premises for the purposes described in Section 3;

(7)  Any lien shall be filed against the premises because of any act or omission of the Lessee and shall not be discharged within thirty (30) days; or

- 26 -

CED 468

(8)   The Lessee shall fail duly and punctually to pay the rental or to make any other payment required hereunder when due to the Port Authority; or

(9)   The Lessee shall fail to keep, perform and observe each and every other promise, covenant and agreement set forth in this agreement, on its part to be kept, performed or observed, within thirty (30) days after its receipt of notice of default thereunder from the Port Authority (except where fulfillment of its obligation requires activity over a period of time, and the Lessee shall have commenced to perform whatever may be required for fulfillment within fifteen (15) days after receipt of notice and continues such performance without interruption except for causes beyond its control);

then upon the occurrence of any such event or at any time thereafter during the continuance thereof, the Port Authority may by thirty (30) days' notice terminate the letting and the Lessee's rights hereunder, such termination to be effective upon the date specified in such notice.  Such right of termination and the exercise thereof shall be and operate as a conditional limitation.

(b)   If any of the events enumerated in paragraph (a) of this Section shall occur prior to the commencement of the letting, the Lessee shall not be entitled to enter into possession of the premises, and the Port Authority, upon the occurrence of any such event, or at any time thereafter, during the continuance thereof, by ten days notice may cancel the interest of the Lessee under this Agreement, such cancellation to be effective upon the date specified in such notice.

(c)   No acceptance by the Port Authority of rentals, fees, charges or other payments in whole or in part for any period or periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Lessee (nor any payment or performance by the Port Authority pursuant to the Electric Service Contract) shall be deemed a waiver of any right on the part of the Port Authority to terminate the letting.  No waiver by the Port Authority of any default on the part of the Lessee in performance of any of the terms covenants or conditions hereof to be performed, kept or observed by the Lessee shall be or be construed to be a waiver by the Port Authority of any other or subsequent default in performance of any of the said terms, covenants and conditions.

- 27 -

UED 468

(d)   The rights of termination described above shall be in addition to any other rights of termination provided in this Agreement and in addition to any rights and remedies that the Port Authority would have at law or in equity consequent upon any breach of this Agreement by the Lessee, and the exercise by the Port Authority of any right of termination shall be without prejudice to any other such rights and remedies

Section 27.   Right of Re-entry

The Port Authority shall, as an additional remedy upon the giving of a notice of termination as provided in Section 26 hereof, have the right to re-enter the premises and every part thereof upon the effective date of termination without further notice of any kind, and may regain and resume possession either with or without the institution of summary or any other legal proceedings or otherwise. Such re-entry, or regaining or resumption of possession, however, shall not in any manner affect, alter or diminish any of the obligations of the Lessee under this Agreement, and shall in no event constitute an acceptance of surrender.

Section 28.   Waiver of Redemption

The Lessee hereby waives any and all rights to recover or regain possession of the premises and all rights of redemption, granted by or under any present or future law in the event it is evicted or dispossessed for any cause, or in the event the Port Authority obtains possession of the premises in any lawful manner.

Section 29.   Survival of the Obligations of the Lessee

(a)   In the event that the letting shall have been terminated in accordance with a notice of termination as provided in Section 26 of this Agreement or the interest of the Lessee shall have been cancelled pursuant thereto or in the event the Port Authority has re-entered, regained or resumed possession of the premises in accordance with the provisions of Section 27 of this Agreement, all of the obligations of the Lessee under this Agreement shall survive such termination or cancellation re-entry, regaining or resumption of possession and shall remain in full force and effect for the full term of the letting and the amount or amounts of damages or deficiency shall become due and payable, as more specifically described in subparagraph (b) below, to the Port Authority to the same extent and at the same time or times and in the same manner as if no termination or cancellation of possession, re-entry, regaining or resumption of possession had taken place.

(b)   Upon any termination or cancellation pursuant to Section 26 of this Agreement or upon any re-entry, regaining or resumption of possession in accordance with Section 27 of this Agreement, there shall become due and payable by the Lessee to the Port Authority as damages the sum of the following:

- 28 -

CED 568

(1)   the amount of all other unfulfilled monetary obligations of the Lessee under this Agreement, including without limitation thereto, all sums constituting additional rental here-under and the cost to and expenses of the Port Authority for fulfilling all other obligations of the Lessee which would have accrued or matured during the balance of the term or on the expiration date originally fixed or within a stated time after expiration or termination as provided in this Agreement; and

(2)   an amount equal to the cost to and the expenses of the Port Authority in connection with the termination, cancellati regaining possession and restoring and reletting the premises, the Port Authority's legal expenses and cost, and the Port Authority's cost and expenses for the care and maintenance of the premises during any period of vacancy, and any brokerage fees and commissions in connection with any reletting; and

(3)   Subject to the provisions of subdivision (c) below, the amount equal to the then present value of the total of all basic rentals provided for in this Agreement for the entire term as originally fixed in the Section of this Agreement entitled "Basic Rental" less the amount thereof which may have been actual: paid by the Lessee.

(c)   The Port Authority may maintain separate actions periodically to recover the damage or deficiency then due or at its option or at any time may bring an action to recover the full damages or deficiency for the entire unexpired term.   In any such action the Lessee shall be allowed a credit against its survived damage obligation equal to the amounts which the Port Authority shall have actually received from any tenant, licensee, permittee or other occupier of the premises or a part thereof during such period and if recovery is sought for a period subsequent to the date of suit, a credit equal to the market rental value of the premises during such period (discounted to reflect the then present value thereof).   If at the time of such action the Port Authority has relet the premises, the rental for the premises obtained through such reletting shall be deemed to be the market rental value of the premises or be deemed to be the basis for computing such market rental value if less than the entire premises were relet.   In no event shall any credit allowed to the Lessee against its damages for any period exceed the then present value of the basic rental which would have been payable under this Agreement during such period if termination or cancellation had not taken place.   In determining present value of rental, an interest rate of four percent (4%) per annum shall be used.

Section 30.   Reletting by the Port Authority

The Port Authority upon termination or cancellation pursuant to Section 26 of this Agreement, or upon any re-entry, regaining or resumption of possession pursuant to Section 27 hereof, may occupy

- 29 -

CED 41668

the premises or may relet the premises and shall have the right to permit any person, firm or corporation to enter upon the premises and use the same. Such reletting may be of part only of the premises or of the premises or a part thereof together with other space, and for a period of time the same as or different from the balance of the term hereunder remaining, and on terms and conditions the same as or different from those set forth in this Agreement. The Port Authority shall also, upon termination or cancellation pursuant to Section 26 of this Agreement, or upon re-entry, regaining or resumption of possession pursuant to Section 27 hereof have the right to repair and to make structural or other changes in the premises, including changes which alter the character of the premises and the suitability thereof for the purposes of the Lessee under this Agreement, without affecting, altering or diminishing the obligations of the Lessee hereunder. In the event either of any reletting or of any actual use and occupancy by the Port Authority (the mere right to use and occupy not being sufficient however) there shall be credited to the account of the Lessee against its survived obligations hereunder any net amount remaining after deducting from the amount actually received from any lessee, licensee, permittee or other occupier in connection with the use of the said premises or portion thereof during the balance of the term of the letting as the same is originally stated in this Agreement, or from the market value of the occupancy of such portion of the premises as the Port Authority may itself during such period actually use and occupy, all expenses, costs and disbursements incurred or paid by the Port Authority in connection therewith. No such reletting or such use and occupancy shall be or be construed to be an acceptance of a surrender.

Section 31.    Remedies to Be Nonexclusive

All remedies provided in this Agreement shall be deemed cumulative and additional and not in lieu of or exclusive of each other or of any other remedy available to the Port Authority at law or in equity, and the exercise of any remedy, or the existence herein of other remedies or indemnities shall not prevent the exercise of any other remedy.

Section 32.    Surrender

(a) The Lessee covenants and agrees to yield and deliver peaceably to the Port Authority possession of the premises on the date of the cessation of the letting, whether such cessation be by termination, expiration or otherwise, promptly and in the same condition as at the commencement of the letting, reasonable wear arising from use of the premises to the extent permitted elsewhere in this Agreement, excepted.

(b) Unless required for the performance by the Lessee of it obligations hereunder, the Lessee shall have the right at any time during the letting to remove, and, on or before the expiration or earlier termination of the letting, shall remove the Substation Equipment and its other equipment, removable fixtures and other personal property from the premises, repairing all damage caused by such removal. If the Lessee shall fail to remove its property on or before the termination or expiration of the letting, the Port Authority may remove such property to a public

warehouse for deposit or may retain the same in its own possession and in either event may sell the same at public auction, the proceeds of which shall be applied: first, to the expenses of removal, including repair required thereby, and of storage and sale; second, to any sums owed by the Lessee to the Port Authority, with any balance remaining to be paid to the Lessee; if the expenses of such removal, repair, storage and sale shall exceed the proceeds of sale, the Lessee shall pay such excess to the Port Authority upon demand.

Section 33.    <u>Acceptance of Surrender of Lease</u>

No agreement of surrender or to accept a surrender shall be valid unless and until the same shall have been reduced to writing and signed by the duly authorized representatives of the Port Authority and of the Lessee.  Except as expressly provided in this Section, neither the doing of, nor any omission to do, any act or thing, by any of the officers, agents or employees of the Port Authority, shall be deemed an acceptance of a surrender of the letting or of this Agreement.

Section 34.    <u>Notices</u>

All notices, demands and requests given hereunder shall be in writing and shall be deemed to have been properly given if delivered personally or sent by United States mail to the Executive Director of the Port Authority or the Secretary of the Lessee, respectively, at the principal office of the recipient party.  Each party, by written notice, may designate another office or representative to receive notices hereunder at its principal office.  Any notice given hereunder by registered mail shall be deemed delivered when deposited in a United States Post Office.

Section 35.    <u>General</u>

(a)    Wherever in this Agreement the Lessee agrees or is required to do or has the right to do, any act or thing, the following shall apply:

(1)    The Lessee's obligation shall be performed by it and its rights shall be exercised only by its officers and employees and the rights of user granted to the Lessee with respect to the premises shall be exercised by the Lessee only for its own account and, without limiting the generality of the foregoing, shall not be exercised as agent, representative, factor, broker, forwarder, bailee, or consignee without legal title to the subject matter of the consignment.

- 31 -

3

CED 568

(2)  None of the provisions of this paragraph (a) shall be taken to alter, amend or diminish any obligation of the Lessee assumed in relation to its invitees, business visitors, agents, representatives, contractors, customers, guests, or other persons, firms or corporations doing business with it or using or on or at the premises with its consent.

(b)  The Section headings are inserted only as a matter of convenience and for reference, and they in no way define or limit or describe the scope or intent of any provision hereof.

(c)  All payments required of the Lessee by this Agreement shall be made at the office of the Treasurer of the Port Authority, 111 Eighth Avenue, New York 11, New York, or to such other officer or address as may be substituted therefor.

(d)  The respective representatives of the parties hereinbefore specified in this Agreement (or such substitute as may hereafter be designated in writing), shall have full authority to act for the party concerned in connection with this Agreement and any things done or to be done hereunder.

(e)  No abatement, diminution or reduction of the rent or other charges payable by the Lessee, shall be claimed by or allowed to the Lessee for any inconvenience, interruption, cessation or loss of business or other loss caused, directly or indirectly, by any present or future laws, rules, requirements, orders, directions, ordinances or regulations of the United States of America, or of the state, county or city governments, or of any other municipal, governmental or lawful authority whatsoever, or by priorities, rationing or curtailment of labor or materials, or by war or any matter or thing resulting therefrom, or by any other cause or causes beyond the control of the Port Authority, nor shall this Agreement be affected by any such causes provided, however, that the provisions of this subparagraph (e) shall not be deemed to relieve the Port Authority of its obligations under Section 16 hereof.

(f)  "Causes or conditions beyond the control of Port Authority" shall mean and include acts of God, the elements, weather conditions, tides, earthquakes, settlements, fire, acts of governmental authority, war, shortage of labor or materials, acts of

- 32 -

third parties for which the Port Authority is not responsible, injunctions, labor troubles or disputes of every kind (including all those affecting the Port Authority, each of its contractors, suppliers or subcontractors) or any other conditions or circumstances, whether similar to or different from the foregoing (it being agreed that the foregoing enumeration shall not limit or be characteristic of such conditions or circumstances) which is beyond the control of the Port Authority or which could not be prevented or remedied by reasonable effort and at reasonable expense.

Section 36.   Brokerage

The parties agree that no broker has been concerned in the negotiation of this Agreement and that there is no broker who is or may be entitled to be paid a commission in connection therewith.

Section 37.   Non-liability of Individuals

Neither the Commissioners of the Port Authority nor the Trustees of the Lessee, nor any of them, nor any officer, agent or employee thereof shall be charged personally with any liability or held liable under any term or provision of this Agreement because of its execution or attempted execution, or because of any breach or attempted or alleged breach thereof.

Section 38.   Subordination

This Agreement and the letting hereunder shall be subject and subordinate to all mortgages which may hereafter affect the premises or the Facility, and to all renewals, modifications, consolidations, replacements and extensions thereof, and although the provisions of this Section shall be deemed to be self-operating and effective for all purposes without any further instrument on the part of the Lessee, the Lessee shall execute on demand and without expense to the Port Authority such further instruments confirmatory of the provisions of this Section as the Port Authority may request.

Section 39.   Quiet Enjoyment

The Port Authority covenants and agrees that as long as it remains the owner of the premises, the Lessee upon paying all rentals hereunder and performing all the covenants, conditions and provisions of this Agreement on its part to be performed shall and may peaceably and quietly have, hold and enjoy the premises free of any act or acts of the Port Authority or anyone claiming superior title to the Port Authority, except as expressly permitted in this Agreement.

- 33 -

CED 52468

Section 40.  Premises

(a)   The Lessee acknowledges that it has not relied
upon any representation or statement of the Port Authority or its
Commissioners, officers, employees or agents as to the suitability
of the premises (or of the improvements to be constructed pursuant
to Section 4 hereof) for the operations permitted on the premises
by this Agreement.  The Lessee has thoroughly examined the area of
the demised premises and is satisfied that it is suitable for its
operations.

(b)   The Port Authority shall not be liable to the
Lessee or to any person for injury or death to any person or
persons whomsoever or damage to any property whatsoever at
any time in or about the premises, including but not limited
to any such injury, death or damage from falling material, water,
rain, hail, snow, gas, steam, dampness, explosives, smoke, radiation
or electricity, whether the same may leak, issue, fall or flow
from any part of the Facility or from any other place or quarter
unless said damage, injury or death shall be due to the negligence
of the Port Authority, its employees or agents, provided, however,
that nothing in this subparagraph (b) shall be deemed to relieve
the Port Authority of its obligations under Section 16 hereof.

Section 41.  World Trade Center

"World Trade Center" or "Facility" shall mean the build-
ing complex to be constructed by the Port Authority within the area
in the Borough of Manhattan, City, County and State of New York,
bounded generally by the east side of Church Street on the east,
the south side of Liberty Street and the south side of Liberty
Street extended, on the south, the Hudson River on the west, and on
the north by a line beginning at the point of intersection of the
Hudson River and the north side of Vesey Street extended, running
along the north side of Vesey Street extended and the north side of
Vesey Street to the west side of Washington Street, then along the
west side of Washington Street to the north side of Barclay Street,
then along the north side of Barclay Street to the east side of
West Broadway, then along the east side of West Broadway to the
north side of Vesey Street, then along the north side of Vesey
Street to the east side of Church Street, together with such addi-
tional contiguous area as may be agreed upon from time to time between
the Port Authority and the said City of New York.

Section 42.  Entire Agreement

This Agreement consists of the following:  Pages 1
through 36 inclusive, plus Exhibits A, B and C.

It constitutes the entire agreement and understanding
of the parties on the subject matter and may not be changed, modified,
discharged or extended except by written instrument duly executed by

- 34 -

the Port Authority and the Lessee.  The parties agree that no rep-resentations or warranties shall be binding upon either of them unless expressed in writing in this Agreement.

        IN WITNESS WHEREOF, the parties hereto have executed these presents as of the day and year first above written.

ATTEST:

APPROVED

| FORM | TERMS |
|------|-------|

*Mildred C. Ponti*
ASSISTANT SECRETARY

ATTEST:

THE PORT OF NEW YORK AUTHORITY

By _____

(Title) *Executive Director*

        (Seal)

CONSOLIDATED EDISON COMPANY OF
        NEW YORK, INC.

By _____

(Title) *Administrative Vice President*

        (Corporate Seal)

CED-568

STATE OF NEW YORK ⎫
COUNTY OF NEW YORK ⎬ ss.

On the 29th day of May , 1968, before me personally came *Austin J. Tobin* to me known, who, being by me duly sworn, did depose and say that he resides *200 E. 66 Street, New York City, New York* ; that he is the *Executive Director* of The Port of New York Authority, one of the corporations described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Commissioners of the said corporation; and that he signed his name thereto by like order.

(notarial seal and stamp)

CATHERINE A. ZAFFARANO
Notary Public, State of New York
No. 41-4376392
Qualified in Queens County
Commission Expires March 30, 1969

STATE OF *New York* ⎫
COUNTY OF *New York* ⎬ ss.

On the 29th day of May , 1968, before me personally came *W. Donham Crawford* to me known, who, being by me duly sworn, did depose and say that he resides *at 58 Portland Road, Summit, New Jersey* ; that he is the *Administrative Vice* President of Consolidated Edison Company of New York, Inc., one of the corporations described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Trustees of the said corporation; and that he signed his name thereto by like order.

(notarial seal and stamp)

JOHN MONSEES
NOTARY PUBLIC, STATE OF NEW YORK
NO. 60799310D
QUALIFIED IN WESTCHESTER COUNTY
TERM EXPIRES MARCH 30, 1970

- 36 -



WORLD TRADE CENTER

HORIZONTAL CONTROL

"CO-ORDINATES ARE BASED ON THE DYCKMAN SYSTEM, ESTAB-
LISHED BY THE BOROUGH PRESIDENT OF MANHATTAN, AS MODIFIED BY
THE PORT OF NEW YORK AUTHORITY ENGINEERING DEPARTMENT DUR-
ING THE SUMMER OF 1962; ORIGIN OF THE SYSTEM FALLS APPROXIMATE-
LY AT THE INTERSECTION OF SMITH AND AMITY STREETS, IN THE BOR-
OUGH OF BROOKLYN".

INITIALED:

FOR THE PORT OF NEW YORK AUTHORITY

5/28/68

FOR THE LESSEE

THE PORT OF NEW YORK AUTHORITY
THE WORLD TRADE CENTER

EXHIBIT A                    DRAWING NO: WT-9194 K

CED-558

<u>EXHIBIT "B"</u>

Contract WTC 130.021 - Foundations

| Drawing Number | |
|---|---|
| 1 | Plan |
| 2 | Sections & details |
| 3 | Sections & details |
| 4 | Timber Piles |
| R-4 | Timber Piles |

Contract WTC 130.028 - Structural Steel

| Drawing Number | |
|---|---|
| 1 | Base Plate Plan |
| 2 | Second Floor Plan Elev. 318'-6" |
| 3 | Roof Plan Elev. 335'-0" |
| 4 | Elevations |
| 5 | Details |
| 6 | Column Schedule & Details |
| 7 | Grillages |

Contract WTC 130.029
Electrical Substation Superstructure

| Drawing Number | |
|---|---|
| 001 | Index and Location Plan |
| Architectural | |
| 100 | First Floor Plan - Elevations 303.0 & 306.0 |
| 101 | Second Floor Plan - Elevation 318.5 |

CED-553

- 2 -

WTC 130.029 (Cont'd)

Drawing
Number

| | |
|---|---|
| 102 | Roof Plan |
| 103 | Elevations |
| 104 | Sections |
| 105 | Wall Sections - Sheet No. 1 |
| 106 | Wall Sections - Sheet No. 2 |
| 107 | Stair Details |
| 108 | Truck Driveway Details |
| 109 | Aluminum Louver Details |
| 110 | Miscellaneous Details |
| 111 | Door Schedule |

Structural

| | |
|---|---|
| 200 | Support of electrical ducts & manholes |
| 201 | First Floor Plan - Elevations 303 and 306 |
| 202 | Second Floor Plan - Elevation 318.5 |
| 203 | Roof Plan - Elev. 335.0 |
| 204 | First Floor Plan - Sections & Details, Sheet 1 |
| 205 | First Floor Plan - Sections & Details, Sheet 2 |
| 206 | First Floor Plan - Sections & Details, Sheet 3 |
| 207 | First Floor Plan - Sections & Details, Sheet 4 |
| 208 | Second Floor Plan & Roof - Sections & Details, Sheet 1 |
| 209 | Second Floor Plan & Roof - Sections & Details, Sheet 2 |
| 210 | Second Floor Plan & Roof - Sections & Details, Sheet 3 |

CED-569

- 3 -

WTC 130.029 (Cont'd)

Drawing
Number

Mechanical

| | |
|---|---|
| 300 | Plumbing, Drainage & Misc. Piping - 1st Floor |
| 301 | Plumbing, Drainage & Misc. Piping - 2nd Floor |
| 302 | Ventilation |

Electrical

| | |
|---|---|
| 400 | Conduit Schedule - Sheet No. 1 |
| 401 | Conduit Schedule - Sheet No. 2 |
| 402 | Conduit Schedule - Sheet No. 3 |
| 403 | Conduit Schedule - Sheet No. 4 |
| 404 | Conduit Schedule - Sheet No. 5 |
| 405 | Conduit Schedule - Sheet No. 6 |
| 406 | Conduit Schedule - Sheet No. 7 |
| 407 | 13.8KV & 138 KV Feeder Conduits, Pipes & Manholes |
| 408 | 13.8KV & 138 KV Feeder Conduits, Pipes & Manholes - Sections & Details - Sheet No. 1 |
| 409 | 13.8KV & 138 KV Feeder Conduits, Pipes & Manholes - Sections & Details - Sheet No. 2 |
| 410 | 13.8KV Manholes & Conduits at Switchgear Units; Plans, Sections & Details |
| 411 | Location of Floor Penetrations - First Floor |
| 412 | Location of Floor Penetrations - Second Floor |
| 413 | Control Conduit - Plan & Location of Floor Penetratio |
| 414 | Control Conduit - Sections & Details |
| 415 | Station Grounding for 13.8KV & 138 KV Equipment Plan & Details |
| 416 | Manhole Details |
| 417 | Oil Piping |

EXHIBIT C

SCHEDULE OF EQUIPMENT TO BE FURNISHED
AND DELIVERED BY LESSEE FOR INSTAL-
LATION BY THE PORT AUTHORITY

| Approximate Quantities | Item |
|---|---|
| 1,700 LF | 5 9/16" Copper Pipe |
| 150 | Copper Pipe Couplings |
| 2,500 LF | Ground Cable |
| 860 LF | 3" Oil Piping and Fittings |
| 500 LF | 8" Steel (Fire Protection) Pipe and Fittings |
| 680 LF | 6 5/8" Steel Pulling Pipe and Fittings |
| 2,700 LF | 4" Galvanized Steel Conduit and Fittings |
| 80 LF | 8" Oil-O-Static Pipe and Fitting |

Lessee will furnish actual required amounts and any excess shall be
returned to Lessee.

SCHEDULE OF ADDITIONAL EQUIPMENT TO
BE FURNISHED, DELIVERED AND INSTALLED
BY LESSEE DURING CONSTRUCTION

A.C. and D.C. Control Units.

Oil Tank and Pump Unit (Pressure Maintenance Plant).

Elevator and Accessories.