# EXHIBIT D
## (EXCERPTS FROM 1980 GROUND LEASE)

THE PORT AUTHORITY
OF NEW YORK AND NEW JERSEY

WORLD TRADE CENTER

---

AGREEMENT OF LEASE
between
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
and
7 WORLD TRADE COMPANY

Dated:   December 31, 1980

SPI 025196

CONFIDENTIAL

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| 1. Letting | 2 |
| 2. Term of the Letting | 3 |
| 3. Use of Premises | 4 |
| 4. Development and Construction of Tower Building | 5 |
| 5. Lessee's Rental Obligations | 16 |
| 6. Law Compliance, Taxes and Excises | 24 |
| 7. Sale, Assignment, Transfer, Subleasing | 32 |
| 8. Leasehold Mortgaging | 33 |
| 9. Space Leases | 43 |
| 10. Method of Operation | 47 |
| 11. Lessee's Operations | 48 |
| 12. Maintenance, Repair and Rebuilding | 50 |
| 13. Insurance | 53 |
| 14. Fire and Other Casualty | 58 |
| 15. Business Development | 63 |
| 16. Signs and Names | 64 |
| 17. Indemnity | 66 |
| 18. Alterations and Improvements by the Lessee | 67 |
| 19. Ingress and Egress | 68 |
| 20. Termination | 69 |
| 21. Right of Re-Entry | 73 |
| 22. Survival of the Obligation of the Lessee | 74 |
| 23. Reletting by the Port Authority | 78 |
| 24. Waiver of Redemption | 78 |
| 25. Surrender | 79 |
| 26. Rights of Entry Reserved | 80 |
| 27. Acceptance of Surrender of Lease | 82 |
| 28. Quiet Enjoyment | 82 |
| 29. Port Authority Title | 83 |
| 30. Additional Rent and Charges | 84 |
| 31. Remedies to be Non-Exclusive | 85 |
| 32. Notices | 86 |
| 33. Injury and Damage to Person or Property | 87 |
| 34. Rules and Regulations | 88 |
| 35. Condemnation | 89 |
| 36. Payments | 96 |

SPI 025197

CONFIDENTIAL

| Section | | Page |
|---|---|---|
| 37. | Brokerage | 97 |
| 38. | Separability | 98 |
| 39. | Labor Harmony Obligation | 99 |
| 40. | Utilities and Services | 100 |
| 41. | Additional Rights of Termination | 101 |
| 42. | Estoppel Certificates | 102 |
| 43. | Lessee's Right to Extend the Letting | 103 |
| 44. | Definitions | 106 |
| 45. | Headings | 107 |
| 46. | Construction and Application of Terms | 108 |
| 47. | Non-Liability of Individuals | 110 |
| 48. | Force Majeure | 110 |
| 49. | Entire Agreement | 111 |

**Exhibits**

A
R
U
X
Y

**Schedules**

A
E

SPI 025198

CONFIDENTIAL

## AGREEMENT OF LEASE

THIS AGREEMENT, made as of December 31, 1980, by and between THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter called "the Port Authority") a body corporate and politic created by compact between the States of New York and New Jersey with the consent of the Congress of the United States of America and having an office and place of business at One World Trade Center, New York, New York 10048 and 7 WORLD TRADE COMPANY, a limited partnership organized and existing under and by virtue of the laws of the State of New York having as the general partner thereof SILVERSTEIN DEVELOPMENT CORP. , a New York corporation, the said partnership and corporation having an office and place of business at 521 Fifth Avenue, New York, New York, the representative of which is Larry Silverstein (hereinafter called "the Lessee"),

WITNESSETH, That:

WHEREAS, the Port Authority has undertaken the planning, construction and operation of the World Trade Center in the Borough of Manhattan, City, County and State of New York as a facility of commerce pursuant to concurrent legislation of the State of New York, Chapter 209, Laws of New York, 1962 and the State of New Jersey, Chapter 8, Laws of New Jersey 1962; and

WHEREAS, it is desirable to provide at the World Trade Center on a site hereinafter described an additional tower building (hereinafter sometimes called "the Tower Building") to be used as a first-class office building; and

WHEREAS, the Port Authority has heretofore entered into a lease agreement dated May 29, 1968 with Consolidated Edison Company of New York Inc. (Consolidated Edison) covering a portion of the site, (a copy of such lease agreement having been delivered to the Lessee and is hereinafter sometimes referred to as the "Consolidated Edison Lease") upon which there has heretofore been constructed an electric bulk power substation operated by Consolidated Edison serving the public and the World Trade Center; and

WHEREAS, the Lessee desires to lease certain premises on and about said site and the air rights above the same and has agreed to undertake the complete design, construction, equipping and operation of the aforesaid Tower Building all on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the covenants and mutual agreements of the parties hereto, the Port Authority and the Lessee hereby covenant and agree as follows:

SPI 025199

CONFIDENTIAL

**Section l. Letting**

l. The Port Authority hereby lets to the Lessee and the Lessee hereby hires and takes from the Port Authority at the World Trade Center (sometimes hereinafter referred to as "the Facility") in the Borough of Manhattan, City, County and State of New York the following described premises:

    (i) the area, the lower level of which is Elevation 305.55' as shown in diagonal hatching on the sketch annexed hereto, hereby made a part hereof and marked "Exhibit A" and the subsurface area beneath the same; and

    (ii) the area as shown in diagonal crosshatching on Exhibit A, a portion of said area (Elevation 335-0') being the roof of the existing Consolidated Edison electrical substation and the other portion of said area being the air space above the vehicular ramp to the extent shown on said Exhibit A;

together with the improvements, the Tower Building and all other property of the Port Authority, including the Port Authority improvements, which in accordance with the provisions of this Agreement are constructed or installed or are to be constructed and installed on and in all of said areas; the said areas together with the improvements, Tower Building and other property being hereinafter sometimes collectively referred to as "the premises" reserving, however, unto the Port Authority all rights in the area below the roof and the subsurface area of the existing electrical substation, and all rights below the existing truck ramp and the right in the Port Authority, its lessees, permittees and licensees to use the same provided that subject to all the provisions of this Agreement, the Lessee shall have the right to use the subsurface areas including those beneath the existing Consolidated Edison substation for supports and foundations for the Tower Building; and reserving, further, unto the Port Authority all rights in the air space of areas adjoining the premises as well as above the roof or uppermost portion of the Tower Building whether such air space rights are used in connection with the adjacent buildings or improvements or buildings or improvements extending over the roof or uppermost level of the Tower Building provided however that the Lessee,

-2-

SPI 025200

CONFIDENTIAL

subject to all the provisions of this Agreement, including the Port Authority's prior approval, may, if the Port Authority has not previously utilized or transferred the right to utilize the air space above the Tower Building, use such air space to add to the Tower Building or for additional equipment or structures therein, including receiving and transmitting communication equipment for use solely by space tenants of the Tower Building so long as the use of such communication equipment in the opinion of the Port Authority will not or does not in fact interfere with other existing or planned communication equipment in the Facility or conflict with any agreements between the Port Authority and third parties and is aesthetically acceptable to the Port Authority. In the event of any actual interference the Lessee shall discontinue or require the immediate discontinuance of such equipment and failing such the Port Authority may itself take appropriate steps to bring about such discontinuance.

- 2a -

SPI 025201

CONFIDENTIAL

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2144943eDocID=0tableID=1327]    Page 7 of 193

**Section 2.  Term of the Letting**

      2.1  The term of the letting under this Agreement shall commence on January 1, 1981 (hereinafter called "the Commencement Date").

      2.2  The term of the letting under this Agreement shall expire, unless sooner terminated or unless extended, at 11:59 o'clock P.M. on the day preceding the thirty-ninth (39th) anniversary of the Completion Date provided however that if the Completion Date is other than the first day of a month then the term of the letting shall expire on the last day of the calendar month in which the thirty-ninth (39th) anniversary of the Completion Date shall fall.

- 3 -

SPI 025202

CONFIDENTIAL

## Section 3.  Use of Premises

3.1 Subject to all the provisions of this Agreement the Lessee shall use the premises for the construction of an office Tower Building containing no less than one million rentable square feet to be operated by the Lessee as a first-class office building for occupancy by Space Tenants in accordance with the Section of this Agreement entitled "Space Leases".

3.2 Except as hereinafter provided the Lessee shall not use or permit the premises or any portion thereof to be used for retail store purposes or for the sale, preparation or serving of food or beverages except as set forth in the next sentence or in Section 3.3 below. Space tenants of the Lessee shall be permitted to install in their premises, subject to the provisions of this Agreement, facilities for the serving of food and non-alcoholic beverages (including mobile coffee carts) only for consumption on the premises and solely by the space tenant's employees and business guests *provided however* that if such food and beverage facilities are proposed to be operated by other than the space tenant's employees, the proposed operator must be approved in advance by the Port Authority as hereinafter provided. The space tenant shall advise the Port Authority of the terms of the arrangement between the space tenant and the proposed operator including the price range and the menu to be adhered to by said operator. If the Port Authority shall within twenty (20) business days of such notification inform the space tenant that it desires to provide a food and beverage operator on the same terms and conditions as those proposed by the space tenant, the space tenant shall be obligated to meet with the Port Authority and its operator to discuss such food and beverage facilities. If the Port Authority's notice indicates that it will not so provide an operator to conduct the food and beverage facilities desired by the space tenant, or if the Port Authority does not give any notice within such time or if the space tenant after meeting with the Port Authority and its operator elects not to use the Port Authority's operator then the space tenant may use the operator it has selected unless the Port Authority reasonably determines that said operator will adversely affect or interfere with operations at the World Trade Center or will cause or contribute to the causing of labor problems or disturbances thereat.

-4-

SPI 025203

CONFIDENTIAL

    3.3  Notwithstanding the provisions of the first sentence of Section 3.2 above the Lessee shall be permitted to enter into space leases covering the operation of newsstands, such newsstands to be permitted to sell newspapers, periodicals, candy, smoking supplies, tobacco and tobacco products and no other items whatsoever. In the event the Lessee is unable pursuant to Section 19 to erect a pedestrian walkway connecting the Tower Building to the rest of the World Trade Center then the Lessee subject to the provisions of Section 9.1.1 shall have the right to enter into space leases covering the sale of merchandise and the rendering of services to the public, except that with respect to the establishment of public restaurants or public eating facilities the Port Authority's consent and the Lessee's rights are subordinate and subject to whatever rights were given to Hilton International Co. pursuant to an agreement of lease between the Port Authority and Hilton International Co. dated as of April 23, 1974.

- 4a -

SPI 025204

CONFIDENTIAL

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2144943eDocID=0tableID=1327]

## Section 4.  Development and Construction of Tower Building

4.1  The Lessee at its cost and expense shall design, construct and equip on the premises in accordance with the provisions hereinafter set forth, a Tower Building containing not less than one million rentable square feet of first-class office space. The Lessee shall expend for the initial cost of construction of the Tower Building (as such cost is defined and determined in paragraph 4.17 below) not less than One Hundred Million Dollars and No Cents ($100,000,000.00).

4.2  The Port Authority at its cost and expense has constructed certain subsurface caissons located in the area shown in diagonal hatching on Exhibit A. The Port Authority also at its cost and expense has caused to be completed by Consolidated Edison certain column construction work at such locations as shown on Exhibit A, all of the aforesaid caissons and column construction work hereinafter sometimes referred to as "the Improvements". Subject to the terms and conditions of this Section 4 the Lessee shall have the right at its cost and expense to penetrate the roof of the existing Consolidated Edison electrical substation to tie in its construction work to such Improvements. The Port Authority represents that it supervised and inspected construction of the Improvements in accordance with customary Port Authority engineering practices and the Port Authority further represents that it has no knowledge or belief that the Improvements were not constructed in accordance with the plans, drawings, information and specifications heretofore furnished to the Lessee by the Port Authority. The Lessee understands that the representations made by the Port Authority in the preceding sentence are the sole representations regarding the Improvements that the Port Authority is making to the Lessee and the Lessee shall be responsible for determining the adequacy and suitability of the Improvements.

4.3  The Port Authority hereby designates to the Lessee, Robert J. Linn, of the World Trade Department of the Port Authority for coordinating the review and processing of the Lessee's design drawings, plans and specifications for the Tower Building and for inspecting construction thereof.

4.4  The Lessee hereby designates to the Port Authority Emery Roth & Sons and Irwin Cantor & Associates as the architect and consulting engineer respectively to perform the construction of the Tower Building.

4.5  The Lessee within ninety (90) days from the Commencement Date shall prepare and submit to the Port Authority for its review and approval basic design schematic

-5-

SPI 025205

CONFIDENTIAL

plans for the Tower Building, including but not limited to column locations, service core designs and general building service areas. The Tower Building depicted thereon shall not exceed or be incompatible with the weight, load bearing or other design or engineering characteristics of the Improvements except that the Lessee has advised the Port Authority that subject to obtaining the approval of Consolidated Edison the Lessee intends to erect a Tower Building in excess of one million rentable square feet and if the Tower Building depicted thereon is in excess of one million rentable square feet then the basic design schematics shall also show additional foundations and supports and the Tower Building depicted thereon shall not exceed or be incompatible with the weight, load bearing or other design, or engineering characteristics of the Improvements and the Lessee's additional foundations and supports. The Lessee may elect, after its initial submission to the Port Authority, to submit substantially revised basic design schematic plans to the Port Authority, such revised plans to be submitted to the Port Authority no later than six (6) months from the date of submission by the Lessee to the Port Authority of its initial basic design schematic plans. The Lessee may further elect after its submission of revised basic design schematic plans as set forth in the preceding sentence to, again, substantially revise and resubmit to the Port Authority further revised basic design schematic plans, such further revised plans to be submitted to the Port Authority no later than three (3) months from the submission by the Lessee to the Port Authority of its previously revised basic design schematic plans. In its design and construction, the Lessee shall conform to the enactments, codes, ordinances, resolutions and regulations of the City of New York and the State of New York, and the National Electrical Code and the National Fire Protection Association Code in regard to construction as if the Port Authority were a private corporation except that (i) so long as title to the World Trade Center or the premises remains in the Port Authority the Lessee shall not be required to submit its design, construction and building plans and specifications for approval by the City of New York; and (ii) the Chief Engineer of the Port Authority may by notice direct the Lessee to design or construct in excess of or beyond such City, State or Code requirements except that the Lessee shall not be required to design or construct in excess of City, State or Code requirements as to the items set forth in the Outline Specifications previously agreed upon and installed by the Port Authority and the Lessee. Without limiting the generality of the foregoing, the Tower Building (except for construction of the pedestrian walkway

- 6 -

SPI 025205

CONFIDENTIAL

referred to in paragraph (b) of Section 19) shall be designed so that it does not extend beyond the premises let to the Lessee. Within thirty (30) days of receipt of said basic design schematic plans the Port Authority shall give written approval thereto or shall request such revisions or modifications therein as the Port Authority may deem appropriate. Revised or modified basic design schematic plans if so requested by the Port Authority shall be resubmitted by the Lessee within thirty (30) days of receipt of the Port Authority's comments. Within fifteen (15) days of receipt by the Port Authority of said further revisions the Port Authority shall give its written approval thereto or shall request such additional revisions or modifications therein as the Port Authority may deem appropriate. If additional revisions or modifications are required the Lessee shall submit same and the Port Authority shall review same within the time periods set forth in the preceding sentence. The Port Authority hereby consents to the construction of the Tower Building to the extent that the construction is consistent with the items set forth in the said Outline Specifications and will not, subject to the procedures herein set forth, withhold approval to plans to the extent that such plans conform thereto.

4.6  Within ninety (90) days following approval by the Port Authority of the Lessee's basic design schematic plans for the Tower Building (as same may be substantially revised by the Lessee pursuant to the provisions of Section 4.5 above) the Lessee shall prepare and submit to the Port Authority for its review and approval foundation plans and preliminary plans for the entire Tower Building. The provisions covering review and comment and submission of modifications by the Lessee set forth in paragraph 4.5 above (except those relating to substantial revisions) shall apply to said plans and specifications referred to in the preceding sentence. Within one hundred eighty (180) days following approval by the Port Authority of the said foundation plans and preliminary plans the Lessee shall prepare and submit to the Port Authority for its review and approval final construction plans and specifications which shall be in sufficient detail to permit a contractor to build therefrom. Without limiting the generality of the foregoing such plans and specifications shall show the method (if any) proposed by the Lessee to tie-in its construction work to the Improvements and the Lessee's additional foundations and supports as provided above as well as the time for performance of the same and the procedures proposed by the Lessee to avoid interference or adverse impact on operation or maintenance of the electrical substation. It shall be the Lessee's obligation to obtain approvals, if any, that may be necessary from Consolidated Edison regarding performance of construction but the Port Authority agrees it will cooperate with the

- 6a -

SPI 025207

CONFIDENTIAL

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2144943eDocID=0tableID=1327]    Page 13 of 193

Lessee to obtain any such approvals and the Port Authority further agrees to exercise whatever rights it may have, under the Consolidated Edison Agreement that may be necessary to the performance of construction of the Tower Building. Within sixty (60) days of receipt of said final construction plans and specifications, the Port Authority shall give its written approval thereto or shall request such revisions or modifications therein as the Port Authority may deem appropriate. Revised or modified final plans and specifications if so requested by the Port Authority shall be resubmitted by the Lessee within forty-five (45) days of receipt of the Port Authority's comments. Within thirty (30) days of receipt by the Port Authority of said further revisions the Port Authority shall give its written approval thereto or shall request such additional revisions or modifications therein as the Port Authority may deem appropriate.

4.7 In connection with review by the Port Authority of the data and drawings submitted under paragraphs 4.5 and 4.6 above, the Lessee shall submit to the Port Authority such additional data, detail or information as the Port Authority may from time to time request. The Port Authority and the Lessee agree during review of the Lessee's plans, drawings and specifications pursuant to paragraphs 4.5 and 4.6 above to meet with each other twice a month. The Tower Building to be constructed by the Lessee will have an aluminum and glass exterior curtain wall, will not contain a south wall building core and need not duplicate in appearance the existing World Trade Center buildings. The Lessee hereby agrees to construct a Tower Building which in exterior color, facade and curtain wall substantially resembles any one of the New York metropolitan area buildings set forth in the Outline Specifications.

SPI 025208

CONFIDENTIAL

4.8 Subject to the provisions of paragraphs 4.9 and 4.16 hereof, the Lessee shall, after approval by the Port Authority of the Lessee's final construction plans and specifications, commence construction of the Tower Building as soon as reasonably practicable to do so but in no event later than thirty (30) months from the Commencement Date of the term of the letting. The Port Authority, where feasible, will issue approvals covering portions of said final plans and specifications and the Lessee may only to the extent authorized by such approvals, commence and continue construction. Without limiting the generality of the foregoing, upon obtaining the Port Authority's approval of the Lessee's foundation plans the Lessee subject to the provisions of Section 4.15 shall have the right to commence construction of the Tower Building foundations. The Lessee understands and agrees that since the Port Authority may not have approved the Lessee's final plans and specifications in their entirety before the Lessee commences construction as provided in this Section 4.8 if the final plans and specifications as approved by the Port Authority require modifications or changes to the work which has been earlier approved the Lessee shall make such modifications and changes in any such work as may be required by the Port Authority.

4.9 Prior to entering into any Tower Building construction contract or contract for the installation of fixtures or equipment therein the Lessee shall submit to the Port Authority for its approval the name of the contractor to whom it proposes to award any such contract, and if requested, the form of contract to be used by the Lessee. The Lessee shall include in any such contract such provisions relating to labor harmony and payments to subcontractors as the Port Authority may require. The Port Authority shall have the right to disapprove any proposed contractor if in its opinion reasonably exercised the contractor or its proposed subcontractors lack the reputation, experience, personnel or resources to properly construct the Tower Building in accordance with the provisions of this Agreement or if the Port

- 7 -

SPI 025209

CONFIDENTIAL

Authority itself has had an unsatisfactory experience with said contractor or subcontractors. The Port Authority has previously consented to the use by the Lessee of the contractors and subcontractors set forth in a schedule exhibited to and initialled by the parties. The Port Authority shall have no liability or obligation in connection with any proposed or actual construction or installation contract entered into or proposed by the Lessee, whether or not approved by the Port Authority, and the Lessee hereby releases and discharges the Port Authority from liability or claim of damage for loss arising or alleged to arise out of the performance or nonperformance of construction work pursuant to contracts proposed or entered into between the Lessee and its contractor. Any warranties or guarantees contained in any contract entered into by the Lessee for performance of construction or installation work shall be for the benefit of the Port Authority as well as the Lessee and the contracts shall so provide. The Lessee agrees to be fully responsible for any plans, drawings, specifications, material or other data used by it and by its contractors and for any loss or damage resulting from the use thereof notwithstanding that the same may have been approved by the Port Authority and notwithstanding the incorporation therein of Port Authority recommendations or requirements provided however the Lessee shall not be responsible if the Lessee has specifically notified the Port Authority in writing of the Lessee's objections to the Port Authority's recommendations or requirements and the Port Authority has thereafter still required their incorporation.

4.10. All utilities and services (including but not limited to water, sewerage, electricity and steam) required for the performance of the construction work and the operation of the Tower Building shall be obtained by the Lessee from connections or distribution points thereof located off the premises and the Port Authority shall not be required to bring any of the foregoing utilities or services within or without the premises. The Lessee shall be responsible for acquiring and installing all necessary equipment or devices for handling, distributing, transforming, transmission or reduction of any of such utilities or services.

SPI 025210

CONFIDENTIAL

4.11 During the course of construction the Port Authority may from time to time require the Lessee to employ a field representative at the World Trade Center and may require certification by a licensed engineer of structural aspects of the construction. The Port Authority shall have the right through its duly designated representative to inspect the construction work at any and all times during the progress thereof including the machinery or equipment used in connection therewith whether on or off the premises which the Lessee or its contractor shall demonstrate upon reasonable request from the Port Authority. The Lessee will conduct such tests relating to the construction at the premises as the Port Authority may request, including but not limited to wind tunnel testing and curtain wall testing. Notwithstanding the results of wind tunnel testing performed by the Lessee and the New York City Building Code requirements respecting the same, the Lessee shall conform to such additional requirements respecting structural design and construction as the Port Authority may itself impose but the Port Authority shall not act arbitrarily in so doing. All construction and installation work by the Lessee shall be performed in accordance with the plans and specifications, drawings and other data theretofore approved by the Port Authority. All workmanship and materials shall be first-class. The Lessee shall, prior or during performance of any of the construction work hereunder take all reasonable measures to prevent erosion of soil and the blowing of sand or materials and if necessary shall erect fencing or partitioning separating the Lessee's construction from the balance of the Facility. The Lessee shall submit for prior Port Authority approval (and shall thereafter conform therewith) scheduling requirements and requirements concerning the time and manner of delivery of materials and performance of construction work.

4.12 Legal title to the Tower Building construction, including improvements, appurtenances and fixtures shall vest in the Port Authority immediately upon erection or affixation of all or any part on or to the premises.

- 9 -

SPI 025211

CONFIDENTIAL

The Lessee shall execute such documents as the Port Authority may request confirming such ownership by the Port Authority and the date or dates thereof. The Lessee shall also deliver to the Port Authority "as built" cloth (or other material satisfactory to the Port Authority) drawings capable of being reproduced reflecting the construction work and shall keep such drawings current showing therein any changes or modifications made during the term of the letting hereunder; and from time to time at the Port Authority's request furnish updated "as built" drawings showing such changes or modifications.

4.13 The Lessee shall perform construction expeditiously and continuously so that the Tower Building shall be substantially completed (excluding initial installations to be performed for or on behalf of space tenants) not later than twenty-eight (28) months following the commencement of construction, *provided, however,* that such twenty-eight (28) month period may be subject to extension due to causes or conditions beyond the Lessee's control which causes or conditions shall mean the following:

4.13.1 Delays by the Port Authority in reviewing and approving the Lessee's submission of plans and specifications under paragraphs 4.5 or 4.6 above so long as such Port Authority delay is not occasioned by the failure of the Lessee to submit the same when required and to supply additional necessary information requested by the Port Authority;

4.13.2 Delays by the Lessee in obtaining required governmental approvals or authorization (where applicable) for the construction or installation work provided the Lessee has expeditiously applied for and promptly processed the same;

4.13.3 Strikes, labor disturbances, unavailability of materials, acts of God, conditions of war or national emergency, riots, or other public disorder, adverse weather conditions and restraining orders issued by a court of competent jurisdiction if such order has been granted without the fault of the Lessee, and other like causes or conditions to the extent that the impact of the foregoing is not avoidable or reducible by the Lessee's reasonable use of premium time for labor and reasonable use of alternate or substitute materials.

- 10 -

SPI 025212

CONFIDENTIAL

4.13.4 The Lessee understands and agrees that neither the inability of the Lessee for any reason to obtain construction financing nor the financial difficulties or financial problems of its contractors or subcontractors shall be considered to be a cause or condition beyond the control of the Lessee for purposes of this Section 4.13.

4.14 From time to time as portions of the Tower Building (each such portion comprising no less than twenty-five percent (25%) of the total rentable square footage of the Tower Building) are completed and deemed ready for occupancy, the Lessee shall so certify to the Port Authority and the Port Authority shall deliver a certificate giving partial approval covering said portion of the Tower Building within thirty (30) days thereafter unless such certification is not correct or the Port Authority determines that the construction work is unsuitable for occupancy and use. Such certification shall include a representation and warranty by the Lessee that the tower construction does not exceed the structural support capacity of the Improvements and the additional foundations and supports constructed by the Lessee as provided elsewhere in this Section 4. When the construction work has been substantially completed and the Tower Building is ready for occupancy, the Lessee shall deliver to the Port Authority a certificate to such effect certifying that the construction work has been performed in accordance with the approved plans and specifications and except as otherwise provided in this Agreement in compliance with all applicable government laws, ordinances, rules, regulations, requirements, orders. Within sixty (60) days

- 11 -

SPI 025213

CONFIDENTIAL

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2144943eDocID=0tableID=1327]    Page 19 of 193

thereafter, unless such certification is not correct or the Port Authority determines that the construction work is unsuitable for occupancy and use, a final certificate of substantial completion shall be delivered to the Lessee by the Port Authority. The date specified in the first certificate delivered by the Port Authority to the Lessee shall constitute the "Completion Date" under Section 5 and elsewhere under this Agreement.

4.15  In order to induce the Port Authority to enter into this Agreement with the Lessee, the Lessee has covenanted and does hereby warrant to the Port Authority that it will furnish to the Port Authority prior to the commencement of any construction or installation work on the premises, performance bonds (a satisfactory form of which is annexed hereto as Exhibit U and hereby made a part hereof), surety bonds, contracts of guaranty or other assurances satisfactory to the Port Authority in form and amount (as to which form and amount the Port Authority will not act in an arbitrary manner) that the Tower Building will be constructed and will be completed on a timely basis in accordance with the final construction plans and specifications and the terms and conditions of this Section. In lieu of the requirements set forth in the preceding sentence to guarantee the timely completion of construction of the Tower Building in conformance with the final construction plans and specifications and the terms and conditions of this Section the Port Authority will accept the unconditional personal guaranty of Mr. Larry Silverstein (in form satisfactory to the Port Authority) or an unconditional, irrevocable letter of credit in form and amount satisfactory to the Port Authority issued by a banking institution having its main office in the Port District, and acceptable to the Port Authority, payable in New York, New York in favor of the Port Authority.

- 11a -

SPI 025214

CONFIDENTIAL

4.16 All construction and installation work which the Lessee shall do under this Section 4 shall be done strictly in accordance with the following:

4.16.1 The Lessee shall indemnify and hold harmless the Port Authority, its Commissioners, officers, agents and employees against the following distinct and several risks whether they arise from acts or omissions of the Lessee or the Port Authority or of the employees, agents and representatives of the Port Authority, third persons or from acts of God or the public enemy, or otherwise, excepting only risks which result solely from affirmative, wilful acts done by the Port Authority subsequent to commencement of the construction work but if insurance coverage is not available to the Lessee for the Port Authority's negligence then excepting also risks which result solely from the negligent acts done by the Port Authority subsequent to commencement of construction:

4.16.1.1 Risk of loss or damage to the construction work or any part thereof prior to completion thereof. In the event of such loss or damage the Lessee shall forthwith repair, replace, rebuild and make good the construction work without cost to the Port Authority;

4.16.1.2 The risk of death, injury or damage, direct or consequential, to the Port Authority, its Commissioners, officers, agents and employees and to its or their property arising out of or in connection with performance of the construction work. The Lessee shall indemnify the Port Authority, its Commissioners, officers, agents and employees for all such injuries and damages and for all loss suffered by reason thereof;

4.16.1.3 The risk of claims and demands, just or unjust by third persons against the Port Authority, its Commissioners, officers, agents and employees arising or alleged to arise out of the performance of the construction work. The Lessee shall indemnify the Port Authority, its Commissioners, officers, agents and employees against and from and shall reimburse the Port Authority for the Port Authority's costs or expenses including legal expenses incurred in connection with the defense of all such claims and demands.

-12-

SPI 025215

CONFIDENTIAL

4.16.2  The Lessee shall pay all claims lawfully made against it by its contractors, subcontractors or materialmen and workmen and all claims lawfully made against it by other third persons arising out of or in connection with or because of the performance of the construction work and the Lessee shall cause its contractors and subcontractors to pay all such claims lawfully made against them. Nothing herein contained shall be deemed to constitute consent to the creation of any lien or claim against the premises nor to create any rights in said third persons against the Port Authority.

4.16.3  The Lessee shall procure and maintain or cause to be procured and maintained in effect during the performance of the construction work Owner's Protecive Liability Insurance naming as an insured the Port Authority and the Lessee and covering bodily injury (including death) and property damage liability which shall be in addition to all policies of insurance otherwise required by this Agreement, said insurance not to contain any exclusion for bodily injury to or sickness or death of any employees of the Lessee or of any of its contractors which would conflict with the coverages resulting from naming the Port Authority as insured. Said insurance shall be in limits not lower than those set forth for such categories of insurance in the following schedule:

(i)  Bodily Injury Liability:

For injury or wrongful death to one person . . . . . . . . . . . . .   $5,000,000

For injury or wrongful death to more than one
person from any one occurrence . . . . . . . . . . . . . . . . . . . .   $5,000,000

(ii)  Property Damage Liability:

For all damages arising out of injury to or
destruction of property in any one accident . . . . . . . . . . . .   $5,000,000

- 13 -

SPI 025216

CONFIDENTIAL

4.16.4 In addition to the insurance above required, the Lessee shall procure or cause to be procured prior to the commencement of any work:

(a)  Builder's Risk Insurance - Completed Value Form covering loss or damage by fire, standard extended coverage perils and special extended coverage peril and such other perils as the Port Authority may from time to time request, provided the same is commercially available and is customarily carried for such buildings in the New York City area, such policy to be effective all during the performance of the construction work and to include coverage of all materials delivered to the site, but not attached to the land. Such insurance shall name the Lessee, the Port Authority, the contractors and subcontractors as additional assureds and such policy shall provide that the loss shall be adjusted with the Lessee and payable to the Port Authority, the proceeds thereof to be made available to the Lessee for the repair, replacement, rebuilding or other performance of the construction work, upon receipt of the certifications described in Section 14.2.1(1).

(b)  Worker's Compensation and Employer's Liability Insurance required by law.

4.16.5 Each policy of insurance described in paragraphs 4.16.3 and 4.16.4 shall, unless otherwise set forth therein be subject to the applicable provisions of Section 13 of this Agreement.

4.17 The Lessee's initial "cost of construction" for purposes of paragraph 4.1 above and all other purposes under this Agreement shall mean and include the following:

(i)  payments made or incurred by the Lessee to contractors and suppliers for performance of construction of the Tower Building;

(ii)  payments made or incurred by the Lessee for all materials, supplies, equipment and utilities used in connection with performance of Tower Building construction work;

- 14 -

SPI 025217

CONFIDENTIAL

(iii)  payments of any premiums on any performance bond, payments of premiums for any property or liability insurance, payments of premiums for Worker's Compensation and payments of premiums for builders' risk insurance;

(iv)  payments actually made or incurred by the Lessee to real estate brokers in connection with the initial letting of the premises to space tenants provided such payments do not exceed the customary commission rates then in effect; and

(v)  payments made or incurred for engineering, architectural, planning, legal and other professional services and costs paid or incurred by the Lessee for financing and interest for or in connection with construction of the Tower Building and other overhead or carrying charges; and

(vi)  the monies paid or allowances given to space tenants by the Lessee pursuant to space leases for performance of initial space preparation, installation and construction for such space tenants in lieu of performance of such initial work by the Lessee; and

(vii)  such other payments made by the Lessee for or in connection with construction of the Tower Building as would be includible in cost of construction under normal accounting practices in the real estate industry.

Simultaneously with delivery to the Port Authority by the Lessee of the Lessee's final certification required by paragraph 4.14 above the Lessee shall also deliver a sworn statement of the cost of construction of the Tower Building detailing all the foregoing, together with such other evidence of said cost as the Port Authority may request. The Lessee shall from time to time thereafter certify to the Port Authority any additional items to be included in such cost as the Lessee's costs are paid or incurred and also any items to be deleted or reduced. The Lessee shall permit the Port Authority by its agents, employees and representatives at all reasonable times prior to a final determination of cost to examine and audit the records and books of the Lessee which pertain to the said cost; the Lessee agrees to keep said records and books of account within the Port of New York District during such time.

- 15 -

SPI 025218

CONFIDENTIAL