UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                   :

CONSOLIDATED EDISON COMPANY OF       :
NEW YORK, INC.; and                         :
AEGIS INSURANCE SERVICES, INC., LIBERTY   :
INTERNATIONAL UNDERWRITERS, INC.,      :  07 Civ. 7968 (AKH)
NATIONAL UNION INSURANCE COMPANY OF   :
PITTSBURGH, NUCLEAR ELECTRIC INSURANCE  :  ECF CASE
LIMITED and CERTAIN UNDERWRITERS AT    :
LLOYDS (SYNDICATE 1225), all as subrogees of   :
CONSOLIDATED EDISON COMPANY OF NEW     :
YORK, INC.,                           :
                                   :

                 Plaintiffs,      :

            - against -         :

7 WORLD TRADE COMPANY, L.P., 7 WORLD    :
TRADE COMPANY, L.P. d/b/a 7 WORLD TRADE   :
CENTER COMPANY, SILVERSTEIN          :
DEVELOPMENT CORP. and             :
SILVERSTEIN PROPERTIES INC.,        :
                                   :

               Defendants.    :
-----------------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
Eric Seiler
Katherine L. Pringle
Kent K. Anker
Jeffrey R. Wang
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

Attorneys for Defendants

April 15, 2008

600875.5

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT.................................................................................................................................... 2

I.    CON EDISON'S ATTEMPT TO BROADEN THE SCOPE OF THE CONSENT
      AGREEMENT IS INCONSISTENT BOTH WITH SETTLED CONTRACT
      LAW AND WITH THE  PLAIN LANGUAGE OF THE AGREEMENT ........................ 2

      A.    Con Edison's Effort to Construe the Consent Agreement in the "Broader
            Context" of Prior, Separate Agreements Violates the Well-Settled
            Prohibition Against Extrinsic Evidence ............................................................... 2

      B.    Con Edison's Effort to Expand the Scope of the Consent Agreement Is
            Also Inconsistent with the Plain Terms of the Consent Agreement, Which
            Do Not Extend to Indemnification for Con Edison's Alleged Damages ................ 5

II.   IN THE ALTERNATIVE, CON EDISON'S  BREACH OF CONTRACT
      CLAIM AGAINST SILVERSTEIN VIOLATES THE RULE AGAINST
      CLAIM SPLITTING AND RULE 15 ............................................................................. 8

III.  IN ALL EVENTS, CON EDISON'S UNFOUNDED CLAIMS AGAINST
      SILVERSTEIN PROPERTIES INC. MUST BE DISMISSED .................................... 10

CONCLUSION............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*A.H.A. Gen. Constr., Inc. v. New York City Hous. Auth.,*
   92 N.Y.2d 20, 677 N.Y.S.2d 9 (1998) ........................................................................ 4

*American Stock Exch., LLC v. Mopex, Inc.,*
   215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................. 9

*Clalit Health Servs. v. Israel Humanitarian Found.,*
   No. 02 Civ. 6552, 2004 WL 2199505 (S.D.N.Y. Sept. 29, 2004) ........................ 4, 9

*Fogelson v. Rackfay Constr. Co.,*
   300 N.Y. 334, 90 N.E.2d 881 (1950) ......................................................................... 3

*Kindler v. Newsweek, Inc.,*
   717 N.Y.S.2d 56, 277 A.D.2d 159 (1st Dep't 2000) ................................................. 3

*RJE Corp. v. Northville Indus. Corp.,*
   198 F. Supp. 2d 249 (E.D.N.Y. 2002) ....................................................................... 6

*W.W.W. Assocs., Inc. v. Giancontieri,*
   77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ................................................................. 3

### RULES

Fed. R. Civ. P. 15 ................................................................................................................ 9

### TREATISES

22 N.Y. Jur. 2d CONTRACTS § 251 ...................................................................................... 6

Defendants 7 World Trade Company, L.P., 7 World Trade Center Company,

Silverstein Development Corp. and Silverstein Properties Inc. (together, "Silverstein")

respectfully submit this reply memorandum of law in further support of their motion to dismiss

the new complaint filed by Con Edison and its insurers/subrogees (collectively, "Con Edison").

**INTRODUCTION**

In its moving brief, Silverstein painstakingly examined the unambiguous language

of the parties' 1982 Consent Agreement, and demonstrated that the Consent Agreement was not

an open-ended, wholesale indemnity from Silverstein to Con Edison that would extend to the

damages suffered as a result of the events of September 11.

In response, Con Edison does not explain why (or if) Silverstein's analysis is

incorrect, nor does it conduct its own detailed analysis of the contractual language in order to

proffer a competing theory of its meaning.  Rather, Con Edison urges this Court to view the

Consent Agreement "in the broader context of the [1968] lease between Con Edison and the Port

Authority, and the [1980] Ground Lease between the Port Authority and Silverstein," (Opp. Br.

at 5), and thus to give a broader reading than the language of the Consent Agreement itself would

otherwise permit.  However, the Consent Agreement is an integrated document, and its

unambiguous language must be analyzed within the four corners of the agreement itself, not with

resort to extrinsic evidence.

Con Edison's attempt to expand the scope of the agreement also contradicts the

plain terms of the agreement itself.  While Con Edison focuses on two provisions – section 2

addressing the scope of permitted work and section 14 governing the type of insurance required

– neither expands the scope of the relevant indemnification provision, which is found in

paragraph 16(a)(2).  Nor can Con Edison revive its claim by recasting it as a claim for damage

600875.5

from "preconstruction activity" in the form of the building design.  The indemnification only

reaches construction or preconstruction activities that were "submitted, and accepted by, Con

Edison," and Con Edison never alleges that it requested, received, or accepted such designs; thus

even this recast claim falls outside of the scope of the Consent Agreement.

In addition, if this Court were to credit Con Edison's arguments that the Consent

Agreement is derivative of – and should be read in conjunction with – the 1968 and 1980

agreements, Con Edison's claims must then be dismissed because they should have been brought

in the pending litigation between Con Edison and Silverstein, and therefore violate the rule

against claim splitting and Federal Rule of Civil Procedure 15.  Con Edison is not entitled to

maintain two actions against Silverstein at the same time in the same court arising out of the

same facts and set of agreements.

Finally, Con Edison does not address – and thus concedes – Silverstein's

argument that the complaint should in all events be dismissed as against Silverstein Properties

Inc., which is not a party to the Consent Agreement.

## ARGUMENT

### I.

**CON EDISON'S ATTEMPT TO BROADEN THE SCOPE OF
THE CONSENT AGREEMENT IS INCONSISTENT BOTH
WITH SETTLED CONTRACT LAW AND WITH THE
PLAIN LANGUAGE OF THE AGREEMENT**

A.    **Con Edison's Effort to Construe the Consent Agreement in the
"Broader Context" of Prior, Separate Agreements Violates the
Well-Settled Prohibition Against Extrinsic Evidence**

Con Edison's claim that the Consent Agreement "evolved from," and must be

construed in, "the broader context" of two prior, separate agreements is directly refuted by the

merger clause in Section 19 of the Consent Agreement, which provides as follows:

19.    <u>ENTIRE CONTRACT</u>:

> *The entire agreement of the parties is contained in this permit and any additional documents expressly incorporated herein.* Except as so incorporated, any and all previous collateral agreements, negotiations, proposals, promises and conditions are merged herein.

(Consent Agreement at ¶ 19 (emphasis added).)  New York law is well settled that such merger clauses bar reliance on earlier agreements. *See Kindler v. Newsweek, Inc.*, 717 N.Y.S.2d 56, 57, 277 A.D.2d 159, 160 (1st Dep't 2000) (affirming dismissal where "[s]uch merger clause plainly precludes plaintiff's reliance on the alleged earlier and more expansive agreement"); *see also Fogelson v. Rackfay Constr. Co.*, 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950) (dismissing claim based on parties' earlier agreement because the "merger clause announces and demonstrates the all inclusive nature of the written lease and furnishes still additional reason for applying the parol evidence rule" (internal citation omitted)).  The 1968 Con Edison/Port Authority lease and the 1980 Port Authority/Silverstein lease are *not* expressly incorporated into the 1982 Consent Agreement.  As such, Section 19 is clear that those prior agreements are not meant to be incorporated into the unambiguous Consent Agreement.

Con Edison does not dispute – indeed, it affirmatively agrees with Silverstein – that the Consent Agreement is unambiguous. *See* Opp. Br. at 12 (describing the Consent Agreement's "unambiguous language").  The law is well established that where, as here, the agreement's language is unambiguous, extrinsic evidence cannot be introduced to vary or contradict the agreement's terms. *See W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."); *see also A.H.A. Gen. Constr., Inc. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 33, 677 N.Y.S.2d 9, 16 (1998) (extrinsic evidence cannot "be introduced to alter, vary or contradict

the clear and unambiguous terms of an integrated agreement"); *Clalit Health Servs. v. Israel Humanitarian Found.*, No. 02 Civ. 6552, 2004 WL 2199505, at \*6-7 (S.D.N.Y. Sept. 29, 2004) ("If the agreement sets forth the parties' intent clearly and unambiguously, the court need not look to extrinsic evidence to determine the parties' obligations under the contract."). In *Clalit*, the plaintiff attempted to introduce evidence of the parties' prior agreements in order to inform the interpretation of the unambiguous contract at issue in the case. Judge Chin rejected this attempt and dismissed plaintiff's breach of contract claim, expressly holding that the existence of past contracts was inadmissible extrinsic evidence:

> The MOU does not contemplate prior agreements or dealings controlling or influencing IHF and Clalit's ongoing relationship and none of the prior agreements between the parties as alleged in the amended complaint suggest a different result. The MOU is an unambiguous contract and extrinsic evidence is not admissible to show the existence of ambiguity in an otherwise unambiguous document.

*Id.* at \*7 (internal citations and quotations omitted).

These bedrock legal principles apply with equal force here. (In fact, because the prior contracts Con Edison references in its opposition papers are not even between the same two parties, the principles apply with even *greater* force here.) Con Edison's attempt to dramatically expand the scope of the Consent Agreement by invoking the 1968 lease agreement between Con Edison and the Port Authority and the 1980 lease agreement between the Port Authority and Silverstein plainly violates the well-settled prohibition against extrinsic evidence. Accordingly, Con Edison's argument in opposition to Silverstein's motion fails as a matter of law, and the complaint should therefore be dismissed.

**B.**     **Con Edison's Effort to Expand the Scope of the Consent Agreement Is Also Inconsistent with the Plain Terms of the Consent Agreement, Which Do Not Extend to Indemnification for Con Edison's Alleged Damages**

Con Edison's arguments also fail because Con Edison's construction of the Consent Agreement is inconsistent with the Agreement's plain terms. Silverstein's moving brief demonstrated that Paragraph 16(a)(2), the relevant indemnification provision of the Consent Agreement, is limited to "injury or damage, direct or consequential . . . to [Con Edison's] property arising out of or in connection with the Work," defined as "construction or preconstruction activities" that are "in, on or about" the substation, and for plans that have been "submitted, and accepted by, Con Edison." Consent Agreement ¶¶ 16(a)(2), 1 and 2; *see* Silverstein Moving Br. at 6-13. The Consent Agreement was thus a work permit, which provided indemnification only for the work for which access was being provided.[1]

Con Edison never suggests any flaw in that construction or offers an alternative construction. After devoting the majority of its brief to discussion of extrinsic, and thus irrelevant, provisions of the 1968 and 1980 leases, it draws the Court's attention to two sections of the Consent Agreement, paragraphs 2(a) and 14(a). However, neither supports Con Edison's argument for a broader interpretation of the indemnification provision.

Con Edison first claims that paragraph 2(a) "encompasses a scope of the permitted Work more broadly then [sic] does Silverstein in its motion," (Opp. Br. at 12), but its claim relies on a misleading partial citation of the provision. The *entirety* of the paragraph 2(a) provides as follows (with the portion omitted by Con Edison in italics):

---

[1] It bears noting that Con Edison takes issue with Silverstein's characterization of the Consent Agreement as a "permit," claiming that such a conclusion is "erroneous[]" (Opp. Br. at 12). But Silverstein did not originate this characterization for the purposes of its motion; rather, "permit" is precisely the term used by the parties themselves to describe the agreement. *See* Consent Agreement ¶¶ 10, 19.

> *Contractor may be obligated to perform construction work to, or outside of, the Premises as part of the Work whenever Con Edison deems such Work necessary and reasonable to protect the Premises from the possibility of material damage or injury. Contractor shall furnish Con Edison with any and all information, revisions, modifications, changes, instructions, procedures, schedules, plans, drawings and other details which Con Edison deems necessary to consent to* further Work, including any of the design drawings, plans and specifications for the office tower under Section 4 of your lease with the Port and any of the design drawings, plans and specifications for construction of a certain pedestrian bridge under the supervision of the New York City Public Development Corporation.

(Consent Agreement ¶ 2(a).)  Taken in context, it is clear that Con Edison's ability to request plans for the office tower and the pedestrian bridge – in the course of determining whether to allow further Work on or around the substation to protect the substation during the period of construction – was not intended to expand the temporal scope of the Silverstein's obligations *beyond* the period of Silverstein's access to the substation.  Moreover, there is no allegation that Con Edison did, in fact, deem any of this information necessary to consent to any further Work, nor any allegation that any "further Work" was performed.  Con Edison's current effort to cherry-pick language from paragraph 2(a) not only violates the basic principle of contract interpretation that words in a contract be read as part of the whole agreement rather than in isolation,[2] but is also highly misleading.

Con Edison's reliance on paragraph 14(a) fares no better.  Paragraph 14(a) only explains the type of insurance that Silverstein is required to carry.  It does not create an indemnification obligation; that obligation arises out of paragraph 16(a)(2).  Moreover, while

---

[2] *See RJE Corp. v. Northville Indus. Corp.*, 198 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2002) ("[c]ontract provisions should not be read in isolation; rather, the entire contract must be considered") (internal quotations omitted); *see also* 22 N.Y. Jur. 2d CONTRACTS § 251 ("Because the intention of parties is ascertained, not from one provision or particular words or phrases, but from the entire instrument, in the construction of contracts, the entire contract must be considered. … Single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.").

paragraph 14(a) refers to claims "attributable to the Work," that phrase does not appear to be any broader than the phrase in the indemnification provision, which refers to claims "arising out of or in connection with performance of the Work." Consent Agreement ¶ 16(a)(2). Both phrases include the key limitation "Work," which, as already discussed, is defined as "construction or preconstruction activities" that are "in, on or about" the substation, and for plans that have been "submitted, and accepted by, Con Edison." Consent Agreement ¶¶ 1, 2. Thus even if paragraph 14(a) created an indemnification obligation, Con Edison's claims concern damage that is outside of the definition of "Work."

Con Edison tries to salvage its complaint by insisting that the plaintiffs "specifically allege that the structural design of 7 World Trade Center led to the collapse of the building and Con Ed's damages (Complaint,¶ 31)," and claiming that "[i]narguably, structural design is a pre-construction or construction activity" (Opp. Br. at 11). The claim misrepresents the broad-brush allegations of the complaint, which include no such specifics.[3] More importantly, Con Edison's argument simply misses the point. Because "Work" is qualified in the Consent Agreement as only those activities that "have been *submitted to, and accepted by*, Con Edison and all additional and further pre-construction activities and construction work reasonably acceptable to Con Edison," (Consent Agreement ¶ 2(a) (emphasis added)), Con Edison would have no claim unless it alleged that it was damaged by structural drawings that it

---

[3] The language of the complaint, printed below, speaks for itself:

> 31.    Silverstein's acts and omissions in the design, approval, inspection, installation, maintenance, operation, conduct and control of the building systems, including but not limited to the load bearing structural systems, structural modifications, diesel-fueled power generation systems and appurtenant fuel oil and distribution systems and fire protection systems within the Building, led to the destruction of the Building and Substation.

(Complaint ¶ 31.)

had received and approved. Con Edison has never made such an allegation, and without it Con

Edison's damages are outside the scope of the Consent Agreement's indemnification obligation.

Finally, Con Edison asserts that it "makes no sense" for Silverstein and Con

Edison to have limited the scope of the indemnification to the particular work for which access to

the substation was provided. This circular argument depends, however, on Con Edison's false

premise that the scope of the agreement was far broader than the language provides. If, as

Silverstein has amply demonstrated, the agreement was in fact a work access permit, limited to

damages caused by Silverstein during the course of its access to the substation, then it is

eminently sensible that the indemnification obligation would likewise extend only that far.

For these reasons, the arguments in Con Edison's opposition brief are deficient

and the complaint should be dismissed.

## II.

### IN THE ALTERNATIVE, CON EDISON'S BREACH OF CONTRACT CLAIM AGAINST SILVERSTEIN VIOLATES THE RULE AGAINST CLAIM SPLITTING AND RULE 15

Plaintiffs' opposition brief relies on its argument – not raised in the complaint –

that the Consent Agreement "evolved" from the 1968 Con Edison/Port Authority lease and the

1980 Port Authority/Silverstein ground lease, and thus should be interpreted in conjunction with

those agreements. As set forth in Part I, *supra*, Silverstein believes that this argument is wholly

without merit. However, if, as plaintiffs urge, the Consent Agreement is viewed as derivative of

those earlier contracts and read in connection with them, then it is clear that the complaint must

be dismissed because it violates the rule against claim splitting and Federal Rule of Civil

Procedure 15.

600875.5                                     8

The rule against claim splitting requires a plaintiff to assert all its legal theories based on the same facts or transactions in a single action. *See American Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("It is well established, under the doctrine of claim splitting, that a party ... must bring in one action all legal theories arising out of the same transaction or series of transactions."). Con Edison has long had pending litigation against Silverstein and others arising out of the events of September 11, 2001, as this new litigation does. If, as plaintiffs assert, the Consent Agreement is derivative of the two prior agreements and should be read in conjunction with them, then the instant complaint is an even more thinly-veiled attempt to maintain a *second* action against Silverstein arising out of the same transaction. That is, the claims arise not only out of the same facts (the events of September 11, 2001) as the earlier-filed action against Silverstein and others for damage to its substation, but the claims would also involve the same agreements (the allegedly "evolving" agreements leading up to and including the Consent Agreement) that are already front and center in the existing, consolidated cases before this Court. In these circumstances, the rule against claim splitting should operate to bar plaintiffs' later-filed complaint.

Con Edison should have filed a motion seeking leave to amend pursuant to Rule 15. *See* Fed. R. Civ. P. 15. Con Edison's reluctance to ask this Court for such permission now, at this late stage in the litigation, is understandable. Con Edison concedes that it was aware of the Consent Agreement since the late spring 2006 (Op. Br. at 5), yet it sat on this claim for more than a year and half. And its excuse for such lassitude – that it felt it was prudent to first pursue ongoing discovery (*id.*) – rings hollow since Con Edison concedes that the Agreement is unambiguous (thus making extrinsic evidence inadmissible). Moreover, in its entire brief Con Edison cites not a single piece of evidence that it found in that year and a half of discovery. The

Court would certainly have ample reason to deny a motion by Con Edison to amend at this late date in the litigation. But Con Edison is not permitted to circumvent the Court's management of this litigation by simply filing a separate action.

## III.

## IN ALL EVENTS, CON EDISON'S UNFOUNDED CLAIMS AGAINST SILVERSTEIN PROPERTIES INC. MUST BE DISMISSED

Finally, Con Edison ignores, and presumably concedes, the point that Silverstein Properties Inc., which is not a party to the Consent Agreement, is not a proper defendant. *See* Silverstein Moving Br. at 14-15. Silverstein Properties Inc. should never have been named in this action, and it should now be dismissed.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons stated in Silverstein's initial moving papers, plaintiffs have failed to state a claim for breach of contract against any of the defendants, and their new complaint should be dismissed.

Dated:  New York, New York
        April 15, 2008

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Eric Seiler
Katherine L. Pringle
Kent K. Anker
Jeffrey R. Wang
1633 Broadway
New York, NY 10019
(212) 833-1100

*Attorneys for Defendants*

600875.5                                    10